COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Decker, AtLee and Malveaux
Argued at Richmond, Virginia


ABDUL LATEEF SALAHUDDIN

                                                      OPINION BY
v.        Record No. 1874-15-2          JUDGE MARLA GRAFF DECKER
                                                      JANUARY 31, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
J. Martin Bass, Judge Designate

Mason D. Husby (Office of the Public Defender, on brief), for
appellant.

Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
Attorney General; Kathleen B. Martin,[*] Senior Assistant Attorney
General, on brief), for appellee.


Abdul Lateef Salahuddin appeals his convictions for possession of heroin with intent to

distribute in violation of Code § 18.2-248, possession of cocaine in violation of Code § 18.2-250,

and obstruction of justice in violation of Code § 18.2-460.  On appeal, he argues that the circuit

court erroneously denied his motion to suppress evidence obtained through an allegedly unlawful

entry of a hotel room.  He also reasons that absent information obtained in the unlawful search,

the evidence was insufficient to support his conviction for obstruction of justice.  Further, the

appellant contends that the circuit court's admission of testimony estimating the weight of heroin

observed in the hotel room was error.  We hold that the officers' entry into the hotel room was

reasonable under the Fourth Amendment of the United States Constitution and, accordingly, that

the denial of the motion to suppress was not error.  We further hold that the appellant's challenge

---

[*] Kathleen B. Martin became an employee of this Court on August 10, 2016.  She has had
no involvement in the Court's review of this case.

regarding the obstruction of justice conviction fails in light of our determination that the search was constitutional. Finally, we conclude that any error in admitting the challenged testimony estimating the weight of the heroin was harmless. Consequently, we affirm the appellant's convictions.

## I. BACKGROUND

On January 15, 2015, Aaron Heid, an acquaintance of the appellant, rented a room in a Fredericksburg hotel for a one-week period. Heid rented the room on the appellant's behalf and never stayed there himself. According to Heid, the appellant said he could not rent the room directly from the hotel because he had lost his identification. Heid also indicated that the appellant reimbursed him for the cost of the room.

Hotel property manager Brittany Fowler handled the transaction with Heid. When Heid registered at the hotel, he signed a card acknowledging, among other things, that the hotel "reserve[d] the right to conduct random inspections of each room, regardless of whether a guest [was] present for any such inspection." The card further made clear that the guest's failure to comply with any federal, state or local laws or hotel rules could result in the hotel's asking the guest to "leave the premises." It also indicated the "acknowledg[ment]" that the occupant was "a transient guest of this lodging establishment . . . and registration . . . [did] not establish a permanent residence, household or dwelling unit." Finally, by signing the card, the registrant agreed that "no landlord/tenant relationship" was created and that "landlord/tenant statutes" were not applicable to the registrant's stay. The language on the card made no reference to a search of the room by law enforcement. The card also did not list names of any registered guests other than Heid.

According to Fowler, hotel staff "try to get in[to] every room in the hotel at least once a week" to check for cleanliness, fire hazards, and anything else that might "pose a threat" to other

hotel guests. She affirmed that this entry practice was "independent of housekeeping and maintenance."

On January 16, 2015, while observing activity on the hotel's video surveillance equipment, Fowler noticed that six or seven people entered and almost immediately left Room 404, the room rented by Heid, in a thirty-minute period. Fowler had not seen Heid since he registered the previous day. She also did not recognize any of the people coming and going from Room 404 as registered guests, which "made [her] . . . suspicious." Fowler waited until she believed the room was vacant and entered it. Once inside, Fowler saw what appeared to be "a very large amount of marijuana" in plain view on an open shelf. She left the room and notified the police. Fowler testified that "from [her] experience working in the hotel," she was acquainted with the appearance and packaging of illegal drugs, which was "why [she] was inclined to call the police."

Dillon Brooks and Richard Young, patrol officers with the City of Fredericksburg Police Department, were dispatched to the hotel. When Brooks and Young arrived, Fowler told them about the heavy "foot traffic" and the suspected marijuana on the shelf in Room 404. Using her key, Fowler opened the door to the room, entered with the officers, and pointed to what appeared to be marijuana buds in plain view on the shelf. Also visible in the room were various articles of clothing and other personal items. The officers examined the substance on the shelf more closely and believed, like Fowler, that it was marijuana.

While the officers were examining the suspected marijuana and looking at the other items in the room, Fowler opened a drawer in the kitchenette and saw what she thought were "more drugs." According to Fowler, the officers did not ask her to open the drawer and she did so "on [her] own accord" in order to "finish the room inspection" that she had originally entered to perform. Fowler called the officers' attention to the contents of the drawer. They saw "a large

brick of a white to off-white substance in a plastic baggy," which they believed to be "heroin in solid form." Young described the substance as "one of the larger bags . . . that [he had] seen personally of suspected heroin" in his fourteen years in law enforcement. Also in the drawer were plastic bags, a digital scale, and "other items that [they] would consider to be drug paraphernalia." These items were consistent with packaging of marijuana and various other illegal narcotics for distribution.

Brooks and Young finished looking around the room but did not search it. They then left with Fowler. Brooks telephoned Detective Sergeant Devin Clarke, of the department's narcotics division, and described the circumstances that led to the discovery of the marijuana and heroin.

Clarke arrived at the hotel a few minutes later, and the hotel manager opened the room for him. He photographed the suspected narcotics and the surrounding area and then left to obtain a search warrant. While present in the room, Clarke saw the marijuana, which he estimated was about half an ounce. In the open drawer, he saw the digital scale with visible residue, another small bag of marijuana, and "what appeared to be heroin in almost brick form[]." He also saw "indicia of packaging materials[,] . . . numerous empty [convenience store] bags that had the corners ripped out." Additionally, there were "many lottery tickets," which Clarke testified were used to package heroin. He explained that the waxy surface film on the tickets was particularly useful in "keep[ing the heroin] together." He noted that the suspected heroin "had not been ground down or powdered down for resale." Clarke also testified that a typical heroin user would possess the substance in a much smaller amount, one-tenth of a gram. He explained that a user would "not have a large quantity because once they start getting high[,] they can't control it and they will die." According to Clarke, a "pretty bad user" would probably use "close to a gram a day." Finally, Clarke did not see any smoking devices or other items

associated with using heroin in the room.[1]  To the contrary, "[i]t appeared that they were packaging and selling drugs."

Based on Fowler's assurance that she had electronically disabled the key card reader on the door to Room 404, Young returned to his patrol duties, and Brooks accompanied Fowler to the front desk to await the return of the room's occupants and the search warrant.  While Brooks waited, Fowler monitored the video surveillance equipment.  She saw three people enter Room 404 together despite her belief that she had disabled the key card reader.  Once the room had been compromised, Officer Brooks went to the room and waited outside the door for backup.

While Brooks waited, Donald Nicholson, one of the people inside the room, opened the door and discovered Brooks.  The officer saw the appellant and a woman inside the room.  Brooks identified himself as a police officer and ordered the three occupants to get on the ground.  Despite Brooks' instructions, the appellant, aided by Nicholson, grabbed the suspected heroin and rushed into the bathroom with it.  Brooks heard the sound of the toilet flushing.  The appellant and Nicholson then returned to the room.  Nicholson complied with Brooks' order to get on the ground, but the appellant grabbed the marijuana, ran into the bathroom, and also flushed it down the toilet before Brooks was able to activate his taser and restrain the appellant.

Officers subsequently searched the hotel room pursuant to a warrant.  In the course of the search, they found the digital scale, which bore heroin and cocaine residue.  They also seized a plastic bag containing heroin residue and a baggy corner containing 0.3570 gram of cocaine.  Additionally, they discovered two commercially labeled packets of the drug Suboxone.  Finally, in a search of the appellant incident to arrest, Young found $2,038 in cash.

Prior to the appellant's trial, he sought to suppress the evidence.  He contended that it was obtained as a result of an unreasonable search when the officers initially entered the hotel room

---

[1] A device that appeared to be for smoking marijuana was found in the room.

without a search warrant. He also argued that the evidence obtained later, when they searched pursuant to a warrant, was tainted by the earlier search. The trial judge ruled that the appellant had a reasonable expectation of privacy in the room but that entry by the hotel manager and police did not violate the Fourth Amendment based on the facts of the case.

At trial, the Commonwealth introduced photographs of the suspected marijuana and heroin seen when the officers and Sergeant Clarke entered the room before they applied for the search warrant. These were the same items that the appellant later flushed down the toilet while Officer Brooks was attempting to detain the room's occupants, before the search pursuant to the warrant. Sergeant Clarke testified as an expert. He estimated that the heroin he had seen in the drawer, which was the substance shown in the photographs, weighed approximately ten grams. Based in part on the quantity of heroin, Clarke opined that the appellant's possession of the substance was inconsistent with possession for personal use. The appellant unsuccessfully objected to the admission of Clarke's testimony estimating the weight of the heroin.

The Commonwealth also offered the testimony of Corporal Matt Deschenes. Corporal Deschenes was not present at the scene but testified as an expert in "local drug culture." He examined a photo of the heroin found in the drawer and estimated, based on comparison with other objects in the photo, that the partial brick was about the size of a fist. He opined that the photo represented what was "easily a thousand dollars worth of drugs . . . wholesale" and weighed at least ten grams. Deschenes pointed out the quantity of torn-off plastic bags that were found in the room, the lack of any devices for personally ingesting the heroin, the quantity of different drugs, the digital scale, and the large amount of cash found on the appellant's person. Based on this evidence, he, like Clarke, opined that the possession of the heroin was inconsistent with possession for personal use.

The appellant presented evidence in his defense. He testified that the marijuana in the room was his. He also said he knew heroin and cocaine were in the room. He claimed that he was a heroin user and had used heroin in Fredericksburg that day, but he said that the heroin and paraphernalia in the room did not belong to him. The appellant admitted that he tried to destroy evidence that day, but he claimed he was trying to destroy only the marijuana. He testified that seven or eight people came to the room for what he claimed was a party, and he admitted that there was enough heroin there for all of them. According to the appellant, he personally used one to one-and-one-half grams of heroin a day. He said that the bags of heroin and cocaine belonged to Nicholson, the other male in the room at the time, and that Nicholson was preparing to leave with the bags when the police arrived. The appellant said that the $2,000 in cash found on his person was money he had obtained through lawful employment and from family members.

The jury found the appellant guilty of the three offenses at issue in this appeal.[2] He was subsequently sentenced to twenty-five years in prison and a $50,000 fine for possession of heroin with intent to distribute, seven years for possession of cocaine, and five years for obstruction of justice.

## II. ANALYSIS

The appellant argues that the trial court erroneously denied his motion to suppress evidence obtained through what he describes as multiple unlawful entries of the hotel room. He also argues that the evidence was insufficient to support his conviction for obstruction of justice. Finally, he suggests that the admission of testimony estimating the weight of the heroin observed in the hotel room was error. For the reasons that follow, we affirm the convictions.

---

[2] The appellant was also originally charged with possessing cocaine with the intent to distribute. The jury convicted him of the lesser-included offense of possession of cocaine.

*A. Motion to Suppress*

The appellant asserts that he had a reasonable expectation of privacy in the hotel room because he was an overnight guest there. He argues that law enforcement violated his privacy by entering the room with the hotel manager because it was not reasonable for them to conclude that the manager had authority to consent to the entry. He also claims that the hotel manager was acting as a government agent when she conducted a full search of the room while the officers were present. As a result of these actions, he contends that the search warrant pursuant to which the evidence was later seized was invalid because it was based on those unreasonable entries and searches.

On appeal of the denial of a motion to suppress evidence, settled principles require the appellate court to consider the evidence introduced at the suppression hearing and at trial. Beasley v. Commonwealth, 60 Va. App. 381, 385 n.1, 728 S.E.2d 499, 501 n.1 (2012). The Court views that evidence in the light most favorable to the Commonwealth, granting to the evidence all reasonable inferences that flow from it. Id. In reviewing the ruling, we are "bound by the trial court's findings of historical fact unless 'plainly wrong,'" and we "give due weight to the inferences drawn from those facts" by the trial judge and law enforcement. McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). The factual findings to which we defer include the trial court's assessment of the credibility of the witnesses. McCary v. Commonwealth, 36 Va. App. 27, 35, 548 S.E.2d 239, 243 (2001). Ultimately, the Court reviews *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment. Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008).

The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, its "text endorses no absolutes. It instead condemns only 'unreasonable' searches and

seizures." Kyer v. Commonwealth, 45 Va. App. 473, 480, 612 S.E.2d 213, 217 (2005) (*en banc*). Additionally, this prohibition applies only to such searches and seizures conducted by the government or its agents. Debroux v. Commonwealth, 32 Va. App. 364, 371, 528 S.E.2d 151, 154 (noting that the defendant bears the burden of proving a search was conducted by a government actor or agent), adopted on reh'g en banc, 34 Va. App. 72, 537 S.E.2d 630 (2000).

Since the Supreme Court's decision in Katz v. United States, 389 U.S. 347 (1967), "the touchstone" of Fourth Amendment analysis has been "the question whether a person has a 'constitutionally protected reasonable expectation of privacy.'" Oliver v. United States, 466 U.S. 170, 177 (1984) (quoting Katz, 389 U.S. at 360 (Harlan, J., concurring)), quoted with approval in Sanders v. Commonwealth, 64 Va. App. 734, 743, 772 S.E.2d 15, 19 (2015). Whether an individual has a legitimate expectation of privacy in particular premises involves a two-pronged test. Sanders, 64 Va. App. at 744, 772 S.E.2d at 19-20. First, a defendant must show "that he personally has an expectation of privacy in the place searched." Rideout v. Commonwealth, 62 Va. App. 779, 786, 753 S.E.2d 595, 599 (2014) (quoting Minnesota v. Carter, 525 U.S. 83, 88 (1998)). This subjective determination is a finding of fact entitled to deference on appeal. Johnson v. Commonwealth, 26 Va. App. 674, 684, 496 S.E.2d 143, 148 (1998). Second, a defendant must prove that his subjective expectation of privacy is one that society is prepared to recognize as objectively reasonable. Sanders, 64 Va. App. at 744, 772 S.E.2d at 20. This is a legal determination that we review *de novo* on appeal. Id. If a defendant satisfies these two requirements, the burden shifts to the Commonwealth to prove "the legitimacy of [the] warrantless search." Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989); see Harris v. Commonwealth, 241 Va. 146, 152, 400 S.E.2d 191, 195 (1991) (noting that warrantless searches and seizures are "presumptively unreasonable").

Here, the trial court found that the appellant had an expectation of privacy in the room rented by Heid. The court further concluded that the room inspection terms that Heid accepted by signing the registration card also applied to the appellant's occupancy of the room and that, once the hotel manager entered pursuant to those terms and saw suspected drugs, she had authority to allow the police to enter to view the contraband.

Regarding the appellant's subjective expectation of privacy in the room, the evidence accepted by the trial court is that on January 15, 2016, Heid rented the room on the appellant's behalf. The evidence further indicates that the appellant reimbursed Heid for the weekly rental fee and received the room key in return. Additionally, nothing in the record indicates that the hotel prohibited registered guests from having unregistered overnight guests. See Sharpe v. Commonwealth, 44 Va. App. 448, 456 n.3, 605 S.E.2d 346, 350 n.3 (2004). Accordingly, the trial court's finding that the appellant had a subjective expectation of privacy in the room on January 16, 2016, a finding in which the prosecutor acquiesced, is not plainly wrong. This conclusion, however, does not end the inquiry.

Fourth Amendment analysis also requires an assessment of whether this subjective expectation of privacy is one that society is prepared to recognize as *objectively* reasonable. A court determines whether an expectation of privacy is objectively reasonable based on a source *outside* the Fourth Amendment, by reference to either: (1) "concepts of real or personal property law" or (2) "understandings that are recognized and permitted by society." United States v. Jones, 565 U.S. 400, 408 (2012) (quoting Carter, 525 U.S. at 88), quoted with approval in Sanders, 64 Va. App. at 744, 772 S.E.2d at 20. Additionally, this objective assessment is conducted in light of the totality of the circumstances. Sanders, 64 Va. App. at 752, 772 S.E.2d at 23; see 6 Wayne R. LaFave, Search and Seizure § 11.3, at 162 (5th ed. 2012) [hereinafter LaFave] (noting that this assessment involves what the judge ruling on the motion to suppress

- 10 -

knew). Those circumstances include whether the appellant "owned the property, had a possessory interest in it, or was legitimately on the premises," and whether he "had the right to exclude others from it" at the time of the entry. Sanders, 64 Va. App. at 752, 772 S.E.2d at 24.

The Fourth Amendment's reasonableness requirement "generally prohibits the warrantless entry of a person's home . . . , in which one has a reasonable expectation of privacy." Jones v. Commonwealth, 16 Va. App. 725, 727, 432 S.E.2d 517, 518 (1993). Similarly, the general rule with regard to hotel and motel rooms is that a *registered* occupant has a reasonable expectation of privacy "equivalent to [that] of the rightful occupant of a house." McCary, 36 Va. App. at 36, 548 S.E.2d at 243 (quoting Servis v. Commonwealth, 6 Va. App. 507, 514, 371 S.E.2d 156, 159 (1988)); see Sharpe, 44 Va. App. at 455-56, 605 S.E.2d at 350. An overnight guest in a residence also has an objectively reasonable expectation of privacy in the premises for purposes of challenging an entry by the police. See Minnesota v. Olson, 495 U.S. 91, 96-97 (1990). This Court held in 2004 that whether the "privacy interest for personal overnight guests" in a residence also applies to "overnight guests of motel registrants, especially those guests of whose presence motel staff is unaware, has not been resolved by the United States Supreme Court or any Virginia appellate court." Sharpe, 44 Va. App. at 456-57 & n.3, 605 S.E.2d at 350 & n.3 (assuming without deciding that such an expectation of privacy existed). Neither the parties nor this Court have found any controlling precedent decided on this point since that time. We need not, and therefore do not, resolve that issue here. See, e.g., Sanders, 64 Va. App. at 742 n.3, 772 S.E.2d at 19 n.3 (applying the principle that an "appellate court decides cases on the best and narrowest ground"). Instead, we assume without deciding that the appellant had an objectively reasonable expectation of privacy in the hotel room because he was an overnight guest of the registered occupant. Despite this assumption, however, we conclude on the facts of this case that this expectation of privacy became objectively unreasonable—i.e., it ceased to be

- 11 -

one that society was willing to recognize as reasonable—before the point at which the police entered the room.

A registered hotel occupant, like the lawful occupant of a private residence, "may relinquish his expectation of privacy and waive his constitutional right 'by word or deed, either directly or through an agent.'" McCary, 36 Va. App. at 36-37, 548 S.E.2d at 243-44 (quoting Stoner v. California, 376 U.S. 483, 489 (1964)). Further, an overnight guest, while possessing some expectation of privacy, has no right to contest the entry of others whom his host, the registered occupant, allows to enter. See Olson, 495 U.S. at 99; cf. United States v. Trotter, 483 F.3d 694, 697-99 (10th Cir. 2007) (holding that where the defendant had another man rent a storage unit in his own name and then reimbursed the man for the rental fee, the man could consent to a search of the unit), vacated and remanded on other grounds, 552 U.S. 1090 (2008). These principles make clear that the Fourth Amendment privacy rights of an overnight guest in a hotel room are derivative of, and certainly no greater than, the rights of the registered occupant. In this case, therefore, the terms on the registration card that Heid signed are relevant to assessing whether the appellant's expectation of privacy in the room was objectively reasonable, regardless of whether the appellant had any knowledge of those terms. See Sanders, 64 Va. App. at 752, 772 S.E.2d at 23. By signing the registration card, Heid expressly agreed to permit hotel staff to enter the room to inspect it, even in the absence of the room's occupants, which is precisely what occurred here. It was this brief entry and the suspected illegal drugs that the hotel manager saw inside the room that prompted her to contact the police.

As we recognized expressly in McCary, 36 Va. App. at 38, 548 S.E.2d at 244, the commission of a criminal act in a hotel room, standing alone, is insufficient "to negate [an occupant's] reasonable expectation of privacy vis-à-vis . . . law enforcement officers." This principle, however, does not prevent hotel staff from obtaining assistance from law enforcement

to protect the hotel's property interests. See id. at 38-39, 548 S.E.2d at 245. Additionally, the terms of the registration agreement may impact the extent to which the police are permitted to provide such help without running afoul of the Fourth Amendment. See id. at 37, 548 S.E.2d at 244. In McCary, for example, we examined the rule applied in many jurisdictions that a hotel guest who stays beyond the agreed rental period "waives . . . his Fourth Amendment rights and loses his expectation of privacy in the room and its contents." Id. (recognizing the hotel's financial interest in clearing the room promptly to make it available to rent to another).

We applied these principles in McCary, holding that entry by law enforcement was constitutional where a guest had "behave[d] in a manner wholly inconsistent with the proprietor's financial and ownership interests . . . [by] effect[ing] extensive damage to the premises," thereby rendering himself civilly liable and perhaps also criminally responsible. Id. at 37-38, 548 S.E.2d at 244. Under those circumstances, we held that the defendant "no longer maintained an objectively reasonable expectation of privacy in the room." Id. at 38, 548 S.E.2d at 244. We concluded that the hotel clerk, who had initiated contact with the police, "was justified in immediately terminating [the] appellant's occupancy." Id. at 38-39, 548 S.E.2d at 245. Further, we held that the clerk, by doing so, "regained authority to consent to the officers' entering the room at least for the limited purpose of helping the clerk inspect the probable damage." Id. at 38, 548 S.E.2d at 244. Under these circumstances, we reasoned that the defendant's reasonable expectation of privacy in the room ended and, therefore, that he had no legal basis "to object to such an inspection [of the room]" and the seizure of drugs that the officers saw in plain view. Id. at 38-39, 548 S.E.2d at 244-45.

Similarly, in United States v. Allen, 106 F.3d 695, 699 (6th Cir. 1997), the United States Court of Appeals for the Sixth Circuit held that when a motel manager saw drugs in a room and locked the renter out of the room, this action "divested [the defendant] of his status as an

- 13 -

occupant of the room[] and concomitantly terminated his privacy interest in its contents." See id. (noting as an additional independent ground for decision the fact that the room rental period had expired because the defendant had made telephone calls the cost of which exceeded his account balance), cited with approval in United States v. Kitchens, 114 F.3d 29, 31 (4th Cir. 1997) (involving a search conducted following expiration of the rental period). The Court further held that divesting the defendant of his status as an occupant simultaneously revested motel staff with authority to consent for Fourth Amendment purposes to entry of the room by the police. Allen, 106 F.3d at 699-700.

We reach a similar conclusion in the instant case, based in part on additional facts stronger than those in Allen. Here, Heid signed a rental agreement that, in addition to permitting random room inspections, expressly provides that "[g]uests must comply with all . . . laws" and that the renter's failure to do so "may result in [the renter's] being asked to leave the premises." It also states that landlord/tenant laws, along with their concomitant protections, do not apply. In light of these express terms, we hold that the hotel manager's act of telephoning the police—after observing suspicious "foot traffic" and then seeing suspected marijuana in plain view during an authorized inspection of the room—constituted an invocation of the express provision of the rental agreement permitting the hotel to exclude a renter from the premises for failing to "comply with all . . . laws," despite the fact that the renter was not expressly notified of this exclusion. See McCary, 36 Va. App. at 37, 548 S.E.2d at 244 (regarding the risk of losing one's reasonable expectation of privacy, noting the "prevailing view that 'the risk that one assumes . . . when renting a hotel or motel room . . . is substantially greater than the risk assumed when renting residential quarters'" such as a house or apartment (quoting 3 Wayne R. LaFave, Search and Seizure § 8.5(a), at 782-83 (3d ed. 1996))). Consequently, we conclude as a matter of law that, pursuant to the terms of the rental agreement, when the manager led Officers Brooks and Young

- 14 -

into the room, the appellant no longer had an expectation of privacy in that room that society was willing to recognize as objectively reasonable. Instead, custody of the room had reverted to the hotel, and the manager was able to consent to the officers' entry for Fourth Amendment purposes.[3] Compare Allen, 106 F.3d at 699-700 (upholding reversion to motel staff of the right to consent to entry where staff locked out a room's occupant based in part on his illegal drug activity inside the room and contacted the police for assistance), and McCary, 36 Va. App. at 38-39, 548 S.E.2d at 244-45 (upholding reversion to hotel staff of the right to consent to entry where staff contacted the police for assistance based in part on audible property destruction inside the room), with Stoner, 376 U.S. at 484-85, 487-89 (reversing the admission of evidence found in the search of a hotel room where the police initiated contact with hotel staff for permission to search a room whose occupant was a suspect in a robbery in a different town, wholly unrelated to his occupancy of the room).

Based on the appellant's loss of his expectation of privacy in the room, we need not consider whether the hotel manager was acting as an agent of the government when she took the officers to the hotel room, opened the drawer, and discovered additional drugs and paraphernalia

---

[3] In light of this ruling, we need not consider whether the trial court erred by applying the private search doctrine recognized in United States v. Jacobsen, 466 U.S. 109 (1984), as a basis for denying the motion to suppress. See id. at 111, 118-23 (upholding the search of a package by law enforcement where it did not exceed the scope of a search performed by a private shipping company after the box was accidentally damaged in transit); Allen, 106 F.3d at 699 (refusing to apply Jacobsen in part because the police crossed the threshold of the motel room to conduct the search); 1 LaFave, supra, § 1.8(b), at 387 & n.94 (intimating that although a private party may remove contraband from private premises and give it to police, the police may not enter occupied premises to seize the contraband without a warrant, exigent circumstances, or valid consent). See generally Perry v. Commonwealth, 280 Va. 572, 579-80, 701 S.E.2d 431, 435-36 (2010) (holding that an appellate court may properly affirm where the lower court reached the correct result but assigned a different reason for its holding, as long as additional findings of fact are not necessary).

inside.[4]  Further, we conclude that the information used in the affidavit and warrant application was obtained lawfully.  We reach this conclusion because we hold that the officers' pre-warrant entries of the room were reasonable, based on a reversion of control over the room to hotel staff and the appellant's concomitant loss of his objective expectation of privacy in the room and anything visible in plain view.  Accordingly, the ultimate seizure of the various items in the room pursuant to the warrant was lawful, and the trial court's denial of the appellant's motion to suppress was not error.[5]

### B.  Sufficiency of the Evidence to Prove Obstruction of Justice

The appellant alleges that the trial court erred in ruling that the evidence was sufficient to convict him of obstruction of justice "because the evidence necessary for conviction should have been suppressed."  He concedes that he did not challenge the obstruction conviction on this ground in the trial court and urges us to apply the ends-of-justice exception of Rule 5A:18 to reach this claim.

This assignment of error has no merit.  Our holding that the denial of the appellant's motion to suppress was not error defeats the only basis upon which the assignment of error alleges that the evidence was insufficient to support his conviction for obstruction of justice—

---

[4] Also, like in McCary, we need not consider whether the appellant retained an expectation of privacy in closed personal items, such as suitcases, opaque bags, or other containers, which might have been in the room.  See McCary, 36 Va. App. at 39 n.2, 548 S.E.2d at 245 n.2.  The evidence establishes that the officers saw the marijuana in plain view in the room and the heroin in a clear bag inside a drawer, a "container" owned by and then under the control of the hotel for Fourth Amendment purposes.  See id.

[5] Because all entries of the room and seizures of the items found inside it were reasonable under the Fourth Amendment based on the actual consent of the manager and the subsequent search warrant, we need not examine the applicability of Fourth Amendment principles regarding apparent authority, exigent circumstances, independent source or inevitable discovery doctrine, or exclusionary rule deterrence.  See, e.g., Sanders, 64 Va. App. at 742 n.3, 772 S.E.2d at 19 n.3 (applying "best and narrowest ground" principles to decide the case on the merits of the motel room search rather than based on the exclusionary rule or harmless error).

"because the evidence necessary for conviction should have been suppressed." Consequently, based on our ruling that the trial court did not err in refusing to suppress the evidence, we do not further consider this assignment of error.[6] See Smith v. Commonwealth, 65 Va. App. 288, 302-03, 777 S.E.2d 235, 242 (2015) ("specifically limit[ing]" consideration on appeal to "the scope of [the] assignment of error"); see also Charles v. Commonwealth, 270 Va. 14, 20, 613 S.E.2d 432, 434 (2005) (providing that the ends-of-justice exception of Rule 5A:18 does not apply if no error occurred).

### C. Admissibility of Sergeant Clarke's Testimony Estimating Weight of Heroin

The appellant also contends that the trial court erred by admitting Sergeant Clarke's testimony estimating the weight of the heroin in the hotel room drawer at about ten grams. We hold that any error in admitting the challenged evidence was harmless.[7]

---

[6] Because we hold that the trial court did not err in refusing to suppress the evidence, we do not consider the applicability of Code § 19.2-324.1. See id. (stating that when an appellant contends "that the evidence was insufficient because the trial court improperly admitted evidence, the reviewing court shall consider all evidence admitted at trial to determine whether there is sufficient evidence to sustain the conviction" and that if the reviewing court "determines that evidence was erroneously admitted and that such error was not harmless, the case shall be remanded for a new trial" in the Commonwealth's discretion).

[7] In some cases, the facts and circumstances that render any error harmless also support a finding of "waiver." See Isaac v. Commonwealth, 58 Va. App. 255, 260-61, 708 S.E.2d 435, 437-38 (2011) (quoting N.Y. Life Ins. Co. v. Taliaferro, 95 Va. 522, 523, 28 S.E. 879, 879 (1898)); see also Burns v. Bd. of Supers., 227 Va. 354, 363, 315 S.E.2d 856, 862 (1984) (explaining that a defendant may waive his timely objection by subsequently *permit[ting] [such evidence] to be brought out by his adversary without objection*" (quoting Whitten v. McClelland, 137 Va. 726, 741, 120 S.E. 146, 150 (1923))). Although "explained in different ways, the practical effect of the principle . . . is the same." Isaac, 58 Va. App. at 260-61, 708 S.E.2d at 437-38 (quoting Taliaferro, 95 Va. at 523, 28 S.E. at 879). Consequently, we do not separately address the Commonwealth's contention that the appellant waived this argument by failing to object to the duplicative testimony of Corporal Deschenes. Because we conclude that any error was harmless, we also do not consider whether the admission of the evidence was error at all. See, e.g., Abney v. Commonwealth, 51 Va. App. 337, 353-54, 657 S.E.2d 796, 804 (2008) (holding that the "best and narrowest ground" for decision was to conclude that any error in admitting a challenged exhibit and related testimony was harmless without ruling on the admissibility issue (quoting Air Courier Conf. v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring))).

The appellant alleges evidentiary error. We examine this claim under the standard for non-constitutional harmless error. Non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. This Court may uphold a decision on the ground that any evidentiary error involved is harmless if it can conclude "that the error did not influence the jury[] or had but slight effect." Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764 (1946)). An error is harmless "if 'other evidence of guilt is "so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict,"' or 'even if the evidence of the defendant's guilt is not overwhelming, . . . if the evidence admitted in error was merely cumulative of other, undisputed evidence.'" McLean v. Commonwealth, 32 Va. App. 200, 211, 527 S.E.2d 443, 448 (2000) (quoting Ferguson v. Commonwealth, 16 Va. App. 9, 12, 427 S.E.2d 442, 444-45 (1993)); see Commonwealth v. Proffitt, ___ Va. ___, ___, 792 S.E.2d 3, 10-11 (2016) (discussing the concept of cumulative evidence in detail and noting that "testimony [must be] of the same kind and character" in order to qualify as cumulative for purposes of harmless error analysis (quoting Massey v. Commonwealth, 230 Va. 436, 442, 337 S.E.2d 754, 758 (1985))).

Corporal Deschenes testified at trial that the photograph of the contents of the bag of heroin in the drawer enabled him to conclude that the bag weighed ten grams or more. The appellant raised no objection to that testimony in the trial court. Sergeant Clarke's testimony about the weight of the heroin, if erroneously admitted, nevertheless was merely cumulative of Deschenes' estimate.

The appellant contends that the Commonwealth relied on Clarke's "statement of weight to elicit [that] testimony from Corporal Deschenes regarding the street value for the item and its

inconsistency with personal use." He suggests that without Clarke's statement concerning the weight of the heroin, Corporal Deschenes' "opinion as to value would have been inadmissible because it would have lacked an adequate factual basis."[8] For this reason, the appellant argues that the testimony of Deschenes was not merely cumulative.

This argument mischaracterizes the Commonwealth's examination of Deschenes at trial. The evidence establishes that Deschenes was not involved in the investigation of the case and testified solely as an expert. Additionally, although the appellate record does not contain a motion to exclude witnesses, nothing indicates that Deschenes was present in court during Sergeant Clarke's testimony or was privy to his estimation of the weight of the drugs.[9] See, e.g., Davis v. Commonwealth, 35 Va. 533, 537, 546 S.E.2d 252, 254 (2001) (holding that "review of an appeal is restricted to the record" and the appellant "has the burden to preserve an adequate record on appeal to allow [the appellate court] to consider the propriety of the trial court's actions"). Further, the record reflects that Deschenes examined a photograph of the bag of heroin. Based on that examination, rather than on any opinion evidence given by Sergeant Clarke, Deschenes gave his expert opinion regarding first the heroin's value and then its weight. Deschenes explained that he was able to estimate the size of the brick of heroin based on a container of deodorant that was also depicted in the photograph. He concluded based on that comparison that the brick "look[ed] like about a fist-size chunk of material." He estimated, based on the size of the chunk, that it was "easily a thousand dollars worth of drugs . . .

---

[8] We assume without deciding that this argument is not barred by the appellant's failure to raise it below.

[9] Sergeant Clarke testified that he notified Detective Harris, the detective who prepared the affidavit for the search warrant, about his estimate of the weight of the heroin. He was not asked whether he communicated with Deschenes about the heroin. Deschenes testified that he read the "initial report and supplements" written by the officers, but the record does not contain copies of those reports, and Deschenes was not questioned regarding their contents.

wholesale [because] . . . a gram of heroin wholesale you can get . . . for a hundred dollars."
Using Deschenes' representations, the prosecutor asked, "So in your estimation based upon the
hundred dollars a gram, is that your opinion that [the chunk of material in the photograph]
appears to be ten grams or more?" Deschenes confirmed the prosecutor's calculation,
responding, "I would say yes." The prosecutor, in making this inquiry, clearly relied on
Deschenes' earlier testimony that the value of the brick as a whole was at least $1,000 wholesale
and that it cost $100 per gram wholesale, leading to the inescapable mathematical conclusion
that Deschenes believed the quantity of heroin was at least ten grams. Nothing in the record
indicates that the prosecutor's question or Deschenes' reply depended in any way on Sergeant
Clarke's earlier testimony.

Accordingly, Sergeant Clarke's testimony about the weight of the heroin was merely
cumulative of Deschenes' independent testimony on the same point. See Proffitt, ___ Va. at
___, 792 S.E.2d at 10. Further, the record contains significant additional evidence supporting the
jury's conclusion that the appellant possessed the heroin with the intent to distribute it. See, e.g.,
Holloway v. Commonwealth, 57 Va. App. 658, 666-67, 705 S.E.2d 510, 514 (2011) (*en banc*)
(listing relevant factors for consideration). That evidence includes the scales bearing heroin
residue, other packaging paraphernalia, the absence of any devices for personally ingesting the
heroin, the large amount of cash in the appellant's possession, the heavy "foot traffic" seen going
to and from the hotel room earlier in the day, and the appellant's admission that the quantity of
heroin present was sufficient for the seven or eight people who had come to the room earlier in
the day, supporting the inference that the amount of heroin in the bag had been even larger. See
id.; see also, e.g., Davis v. Commonwealth, 34 Va. App. 257, 262-63, 540 S.E.2d 513, 515-16
(2001) (holding admissibility error was harmless).

Consequently, if the admission of Sergeant Clarke's testimony estimating the weight of the partial brick of heroin was error, that error was harmless.

### III. CONCLUSION

We hold that the officers' entry of the hotel room occupied by the appellant was constitutionally reasonable based on the terms of the registration agreement and, therefore, that the denial of the motion to suppress was not error. We further hold that the evidence was sufficient to support the appellant's conviction for obstruction of justice. Finally, we conclude that if the trial court erred by admitting the challenged testimony estimating the weight of the heroin, any error was harmless. Accordingly, we affirm the appellant's convictions.

<u>Affirmed.</u>