COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Fulton and Ortiz
Argued by videoconference

KENNETH CHARLES ALVIN

                                                        MEMORANDUM OPINION* BY
v.          Record No. 1995-22-1              CHIEF JUDGE MARLA GRAFF DECKER
                                                              APRIL 23, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Robert B. Rigney, Judge[1]

J. Barry McCracken, Assistant Public Defender, for appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Kenneth Charles Alvin appeals his conviction, entered upon his conditional plea of guilty,

for possession of a firearm after having been convicted of a nonviolent felony within the previous

ten years in violation of Code § 18.2-308.2. He contends that the circuit court erred by denying his

suppression motion because his "initial seizure" by the police was not supported by a reasonable

articulable suspicion of illegal activity. For the following reasons, we affirm his conviction.

---

*This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge David W. Lannetti ruled on the suppression motion challenged in this appeal.
Judge Rigney accepted the appellant's conditional guilty plea and sentenced him.

BACKGROUND[2]

On an afternoon in December 2021, Officers Darren Labat and Michael Martinson of the Norfolk Police Department were patrolling a Norfolk neighborhood in a marked police vehicle. Labat saw the appellant walking along a path on the opposite side of the street in the same direction the officers were driving. As Officer Labat slowed down to cross a set of railroad tracks, the appellant was just ahead and to the left of the patrol car he was driving. From a distance of ten to fifteen feet, Labat observed a "heavy object . . . swinging in . . . [the appellant]'s right pocket every time he made a step forward." Labat described the appellant's pants as made of "thin fabric" and said the object "appeared heavier than a cellphone would be." Further, "every time [the appellant] did a step forward with his right leg," the officer "could see th[e] object pressed against the inside of his pants pocket on the right side, between the pants pocket and his leg." Through the thin fabric, the officer "could clearly see an outline of a firearm" "against [the appellant's] leg." He specified that this included "the handle of the firearm" and "the barrel of the firearm." Labat pointed toward the appellant and brought the object to Martinson's attention by saying "right pocket."

The officers drove past the appellant but quickly turned right into a commercial entrance and circled the patrol car back toward him. As Labat waited for traffic to pass so that he could re-enter the street, he continued to watch the appellant and told Martinson, "He's holding his right side."

Officer Labat drove across the street, pulled up near the appellant, and parked the patrol car. He reiterated to his partner, "Yep, right pocket."

_____

[2] On review of the denial of a motion to suppress, the appellate court "state[s] the facts 'in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences'" from the evidence. *Hill v. Commonwealth*, 297 Va. 804, 808 (2019) (quoting *Commonwealth v. White*, 293 Va. 411, 413-14 (2017)).

Both officers immediately got out of the car. As Labat stood at his driver's door, he looked across the police car toward the appellant, and Martinson said, "Hey, hold up a second." The appellant responded, "Huh?" Martinson repeated, "Hold up a second."

As Officer Labat walked around the front of the patrol car toward the appellant and spoke to him, Martinson approached from the passenger's side of the car. The appellant stopped walking. After questioning the appellant about whether he had identification, a concealed weapon, and a concealed weapon permit, Officer Labat patted down the appellant's right pants pocket and removed "an operable firearm," a .380 caliber pistol.[3] The officers subsequently determined through a records check that the appellant did not have a permit to carry a concealed weapon and in fact had a felony record. As a result, they arrested him.

The appellant was charged with possession of a firearm after having been convicted of a nonviolent felony within the previous ten years in violation of Code § 18.2-308.2.[4] Before trial, he made a motion to suppress the evidence recovered during his encounter with the officers. At the hearing, defense counsel offered Officer Labat's body-worn camera footage into evidence, and a portion of it was played for the court. The footage reflected the various times and positions from which the officers were able to view the appellant but recorded him at close range only when he was standing still during the face-to-face portion of the encounter.

Labat testified that the area in which he observed the appellant was "a high-crime" or "hotspot" area. He noted that he had made "several arrests in that area involving weapons and narcotics, as well as stolen autos." And "just prior to" Labat's encounter with the appellant, a

---

[3] Defense counsel conceded in the circuit court that the appellant said he did not have a concealed weapon permit before the pat down took place.

[4] The appellant was also charged with carrying a concealed weapon, second offense, in violation of Code § 18.2-308, but that charge was nolle prossed pursuant to the plea agreement.

shooting involving a traffic stop had occurred "within 50 yards" of the area from which the appellant was walking.

Defense counsel argued that while Labat expressed certainty that he saw the outline of a gun in the appellant's pocket, the officer made those observations from across the street. He contended that Labat's "speculation" that "the imprint" he saw "through clothing" "might be a weapon" was "irrelevant." Defense counsel suggested that whether the stop was lawful turned "largely . . . on what, if anything, officers are allowed to do purely based on speculation."

At the conclusion of the hearing, the court denied the motion to suppress. It expressly found that Labat's testimony was "credible" and ruled that "under the totality of the circumstances there was sufficient reasonable suspicion or probable cause for the search."

The appellant entered a conditional guilty plea that preserved his right to contest the denial of his motion to suppress. At the plea hearing, the parties executed a written stipulation of facts. The stipulation provided that "Officer Labat stopped the [appellant] after observing the outline of a firearm in [his] right pocket." It further indicated that Labat did not put the appellant in the patrol car or make an arrest until he determined that the appellant did not have a concealed weapon permit. Finally, the stipulation confirmed that the appellant was a convicted nonviolent felon and had a prior concealed-weapon conviction. The court accepted the appellant's guilty plea, convicted him of the firearm possession charge, and sentenced him to three years of incarceration with one year suspended.

ANALYSIS

The appellant argues that the circuit court erred by denying his motion to suppress. Specifically, he suggests that the officer's "subjective opinion" that he was carrying a firearm was inadequate to support his initial seizure under the Fourth Amendment to the United States Constitution.

On appeal of a circuit court's denial of a motion to suppress, the appellant bears the burden of showing that the ruling was reversible error. *Jones v. Commonwealth*, 277 Va. 171, 177-78 (2009). When reviewing such a ruling following entry of a conditional guilty plea, this Court considers the evidence introduced at the suppression hearing along with any "evidence," "stipulation," or "unobjected-to proffer . . . presented to the [circuit] court in conjunction with that guilty plea." *Smith v. Commonwealth*, 61 Va. App. 112, 116 n.2 (2012). We view that evidence in the light most favorable to the Commonwealth. *Beasley v. Commonwealth*, 60 Va. App. 381, 385 n.1 (2012).

In evaluating the circuit court's determination, the appellate court is "'bound by [its] findings of historical fact unless "plainly wrong,"' and we 'give due weight to the inferences drawn from those facts' by the trial judge and law enforcement." *Salahuddin v. Commonwealth*, 67 Va. App. 190, 202 (2017) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)). "[W]e review de novo the [circuit] court's application of defined legal standards to the particular facts of a case." *Ferguson v. Commonwealth*, 52 Va. App. 324, 334 (2008) (emphasis omitted).

The appellant suggests that the officers stopped him without reasonable articulable suspicion to believe that he was engaged in criminal activity because the only information available at the time was that he "appeared to have a heavy object in his pocket." He argues that this observation "did not provide a reasonable basis to conclude that the item was likely a concealed firearm." He maintains that Officer Labat's "subjective opinion" that he saw "the outline of a handgun" as he drove past the appellant "was hardly more than sheer speculation." As a result, he contends that Labat lacked reasonable, articulable suspicion to stop and detain him.

"A Fourth Amendment seizure of a person occurs either by physical force or submission of the person to the assertion of law enforcement authority." *Hill v. Commonwealth*, 297 Va. 804, 811 (2019). The appellant argues that the police detained him for Fourth Amendment purposes when they "exited their vehicle and confronted him[,] demanding that he stop." We assume without deciding that the officers' actions at that time constituted a seizure within the meaning of the Fourth Amendment. *See generally Commonwealth v. White*, 293 Va. 411, 419 (2017) (avoiding a "nuanced contest" of Fourth Amendment law because a different path provided the best and narrowest ground on which to resolve the case). Nevertheless, even if the appellant was seized when the officers told him to "hold up," the evidence, for the reasons that follow, supports the circuit court's ruling that the police had reasonable suspicion to support a stop and resulting seizure.

In order to conduct an investigatory stop as permitted by *Terry v. Ohio*, 392 U.S. 1 (1968), an officer must have "a reasonable suspicion . . . that criminal activity may be afoot." *Mason v. Commonwealth*, 291 Va. 362, 367 (2016) (citing *Terry*, 392 U.S. at 30); *see United States v. Arvizu*, 534 U.S. 266, 273 (2002). "The existence of reasonable suspicion permits a brief seizure 'while the officer questions [the suspect], tries to identify him[,] and attempts to gather additional information to . . . dispel or confirm his suspicions.'" *Hairston v. Commonwealth*, 67 Va. App. 552, 561 (2017) (alterations in original) (quoting *Branham v. Commonwealth*, 283 Va. 273, 279-80 (2012)).

The standard is well defined. "To establish reasonable suspicion, an officer must be able to articulate more than an unparticularized suspicion or 'hunch' that criminal activity is afoot." *Rudolph v. Commonwealth*, 277 Va. 209, 210 (2009). Even so, "the level of suspicion . . . require[d] is 'considerably less than proof of wrongdoing by a preponderance of the evidence[]' and 'obviously less' than is necessary for probable cause." *Bland v. Commonwealth*, 66

- 6 -

Va. App. 405, 413 (2016) (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)). It "requires only 'some minimal level of objective justification.'" *Hairston*, 67 Va. App. at 561 (quoting *Branham*, 283 Va. at 280). As the standard relates to this case, "to justify an investigatory stop[,] . . . 'the officer does not have to be absolutely certain that the person is armed. If he reasonably believes that the individual might be armed, the [stop] is warranted to protect himself or others who may be in danger." *Andrews v. Commonwealth*, 37 Va. App. 479, 491 (2002) (quoting *Simmons v. Commonwealth*, 217 Va. 552, 556 (1977)). Further, the standard by which "reasonableness" is measured is clear. It is "judged from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's intent or motivation." *Atkins v. Commonwealth*, 57 Va. App. 2, 19 (2010) (quoting *Scott v. Commonwealth*, 20 Va. App. 725, 727 (1995)).

In assessing the record for reasonable suspicion, the court considers the "totality of the circumstances." *Mason*, 291 Va. at 368 (quoting *Arvizu*, 534 U.S. at 273). Each case is decided on its own particular facts. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). The facts in this case were presented in large part through witness testimony, supplemented by body camera footage, and were later augmented by stipulated facts presented in conjunction with a guilty plea.

The appellant's argument that the circuit court erred by crediting Labat's testimony that the heavy object in his pocket appeared to be a gun is refuted by the facts and the law. The totality of the circumstances here, viewed in the light most favorable to the Commonwealth, support that court's conclusion that Officer Labat had objective reasonable suspicion at the time of the seizure to detain the appellant to investigate whether he lawfully possessed the firearm whose outline Labat could clearly see in his pocket.

The officer provided details regarding his evolving observations. These "historical fact[s]" were before the circuit court to assess. *See Salahuddin*, 67 Va. App. at 202 (quoting

- 7 -

*McGee*, 25 Va. App. at 198). Further, "issues of witness credibility and the weight afforded a witness'[s] testimony 'are matters solely for the fact finder[,] who has the opportunity to see and hear that evidence as it is presented.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 239 (2022) (first alteration in original) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018)). And "[w]hen the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree." *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)).

Labat testified that he could see a "heavy object," "heavier than a cellphone would be," that was "swinging in" the appellant's right pants pocket every time he took a step forward. *See Andrews*, 37 Va. App. at 492 (recognizing the presence of a "heavy object" in an individual's jacket pocket as a factor in determining whether reasonable suspicion supports a pat down for a firearm). Labat added that with each right step forward, the object was compressed between the pocket and the right leg. Through the thin fabric of the appellant's pants, the officer "could *clearly* see an outline of a firearm," including both "the handle" and "the barrel." (Emphasis added). *See United States v. Bontemps*, 977 F.3d 909, 916 (9th Cir. 2020) (recognizing that "guns are made of rigid materials" and "possess a relatively distinctive shape").

Labat first made these observations about the weight and very distinctive shape of the object when the officers passed the appellant in their police car while slowing down to cross some railroad tracks. Labat then stopped the car a short distance away while turning around and looked at the pocket again, when the appellant was still walking. The officer had yet another opportunity to view the appellant more closely when he pulled up next to the appellant as the appellant was still moving forward, before the face-to-face encounter. The circuit court, as the finder of fact, was entitled to conclude that the officer's testimony articulating what he saw each

- 8 -

time the appellant took a step forward with his right leg was credible.[5] *See Salahuddin*, 67 Va. App. at 202. That is precisely what the court did when it said, "The [c]ourt finds the officer . . . credible."[6]

Augmenting Labat's testimony was his body-worn camera footage. Recorded images, including video footage, may "aid . . . in ascertaining the truth." *Bowman Apple Prods. Co. v. Commonwealth, State Water Control Bd.*, 50 Va. App. 383, 392 (2007) (quoting *Adams v. Ristine*, 138 Va. 273, 298 (1924)). The reviewing appellate court must defer "to the factfinder's 'interpretation of . . . video evidence'" just as it would to any other factual finding, reviewing it "'for the limited purpose of determining whether any rational factfinder could have viewed it as the [factfinder] did.'" *See Commonwealth v. Barney*, 302 Va. 84, 88 (2023) (second alteration in original) (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)). That footage corroborated Labat's testimony that he directed his partner's attention to the appellant's right side or right pocket three times prior to the stop. Based on the footage, in conjunction with Labat's very specific sworn testimony about what he saw,[7] the circuit court could conclude that

---

[5] Courts in other jurisdictions have also accepted the testimony of law enforcement that they could identify the outline of a gun through clothing. *See, e.g.*, *People v. Prochilo*, 363 N.E.2d 1380, 1382 (N.Y. 1977) (per curiam) (upholding a weapons frisk based on an officer's observation of an item in a man's pocket that "struck him immediately as . . . 'the outline of a gun'"), *cited with approval in* 4 Wayne R. LaFave, *Search and Seizure* § 9.6(a), at 860 n.11 (6th ed. 2020); *see also United States v. Johnson*, 932 F.2d 1071, 1072-73 (5th Cir. 1991) (per curiam) (in denying the defendant's petition for rehearing, affirming the trial court's acceptance of testimony that the outline of a handgun "was clearly visible to the officers" "through the pocket of [the defendant]'s soft cloth coveralls, which were lying near[]" him "in 'plain view'").

[6] Notably, the parties' written stipulation provides that Labat "stopped the [appellant] *after observing the outline of a firearm* in [the appellant]'s right pocket." (Emphasis added). On such "purely factual questions," a party's concessions are binding. *See Logan v. Commonwealth*, 47 Va. App. 168, 172 (2005) (en banc).

[7] Here, Officer Labat testified he could clearly see the outline of the firearm against the appellant's leg each time he stepped forward with that leg while walking. The officer's body camera video, however, largely captured the appellant *while he was walking* only from a distance. When Labat was in the best position to view the outline of the firearm *while the appellant was*

the officer formed an objectively reasonable suspicion that the appellant had a firearm in his pocket.

Adding to Officer Labat's observations, he was "entitled to view the circumstances . . . in light of his training and experience" and to consider any conduct of the individual that he viewed as "suspicious." *Atkins*, 57 Va. App. at 19. "[A] trained law enforcement officer may [be able to] identify criminal behavior [that] would appear innocent to an untrained observer." *Alston v. Commonwealth*, 40 Va. App. 728, 739 (2003) (first and second alterations in original) (quoting *Taylor v. Commonwealth*, 6 Va. App. 384, 388 (1988) (en banc)). At the time of the seizure, Labat had worked for more than two years as a member of a special departmental team that patrolled neighborhoods known for frequent shootings, burglaries, robberies, drug offenses, and other crimes involving weapons. "[O]n a regular basis," he encountered people he "believe[d] to be armed." Along with seeing the weight of the object and the clear outline of a firearm, Labat knew that the area was a "high crime" neighborhood in which arrests involving weapons and narcotics had been made. *See Whitaker v. Commonwealth*, 279 Va. 268, 276 (2010) ("[W]hile a suspect's presence in a high crime area, standing alone, is not enough to support a reasonable particularized suspicion, it is a relevant contextual consideration in a *Terry* analysis."). The officer explained that at the time of this particular encounter, the appellant was "walking next to" an apartment complex at which Labat had made several arrests involving weapons, narcotics, and stolen autos. He added that the block that the appellant was "walking from" had been the location of a shooting during a very recent traffic stop.

The totality of these circumstances—including the outline of the handle and barrel of the firearm that was visible through the thin fabric of the appellant's pants—support the circuit

---

*walking*, Labat's body camera recorded only a forward view, not what he saw as he turned his head to the left. *See Meade*, 74 Va. App. at 805-06 (requiring deference to the factfinder's interpretation of the evidence, including video evidence, unless plainly wrong).

- 10 -

court's ruling that Labat reasonably believed the appellant was carrying a concealed weapon, a criminal offense. In fact, the Supreme Court of Virginia has held that carrying a concealed weapon provides probable cause to arrest. *See id.* at 277-78 (holding "[t]he fact that [the defendant] might not have been convicted on [a] concealed weapons charge . . . on a showing he had a permit d[id] not affect the viability of the probable cause to arrest [him for the offense] in the first instance"); 2012 Va. Acts ch. 132 (adding language to Code § 18.2-308(A) expressly classifying as an "affirmative defense to a violation of [carrying a concealed] handgun" the fact "that a person had been issued . . . a valid concealed handgun permit").

If an officer can lawfully *arrest* a defendant despite not knowing whether he has a concealed-carry permit, that officer may certainly choose the less intrusive approach of merely conducting a *Terry* stop and *investigating* whether the defendant has a permit. *See Bontemps*, 977 F.3d at 915 (reasoning that "a bulge underneath a tight-fitting shirt that clearly reflects the distinct outline of a large gun" is "an obvious indicator of a concealed firearm" and "can form the basis for a *Terry* stop in a jurisdiction where carrying a concealed weapon is presumptively unlawful"); *United States v. Lewis*, 674 F.3d 1298, 1304-05 (11th Cir. 2012) (holding that reasonable suspicion of carrying a concealed weapon supported "briefly stopping" a person "before inquiring further about whether he had" a permit due to a Florida law making possession of a concealed-carry permit an affirmative defense). The combination of facts here provided Officer Labat with the necessary objectively reasonable basis to seize the appellant. *See Jones v. Commonwealth*, 52 Va. App. 548, 560-61, 563-65 (2008) (holding that the existence of "reasonable articulable suspicion [to believe] that [a defendant] possessed a concealed weapon . . . *ipso facto* rendered him potentially armed and dangerous," permitting a *Terry* stop).

The appellant relies on language in *Harris v. Commonwealth*, 276 Va. 689, 697 (2008), to suggest that Officer Labat's testimony was nothing more than a "subjective characterization"

- 11 -

of the "heavy object in [the appellant's] pocket" as a firearm and did not establish objective reasonable suspicion. We disagree.

It is clear that determining whether an officer had reasonable suspicion requires application of an objective standard. *See, e.g.*, *Bland v. Commonwealth*, 66 Va. App. 405, 412 (2016) (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996)). This means that an objective assessment of the totality of the circumstances, not the officer's subjective intent, governs whether the seizure or search was reasonable. *See id.* at 413-14. The court, not the law enforcement officer, ultimately determines the legal significance of the observed conduct. *See Bass v. Commonwealth*, 259 Va. 470, 475 (2000) (citing *Ornelas*, 517 U.S. at 697-99). This does not, however, prevent the circuit court from giving significant weight to an officer's factual recounting of what he observed. *See Bland*, 66 Va. App. at 414 ("Reasonable suspicion can be based on an officer's personal observations . . . ."). Reasonable, articulable suspicion is just that—an *articulated* basis on which to believe that criminal activity such as carrying a concealed weapon "*may* be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (emphasis added) (quoting *Terry*, 392 U.S. at 30); *see Mason*, 291 Va. at 367; *Andrews*, 37 Va. App. at 491. As part of its analysis, the reviewing circuit court must determine the credibility of the factual testimony from the officer or officers just as it would with regard to any fact witness. *See Hammer*, 74 Va. App. at 239; *see also Logan v. Commonwealth*, 279 Va. 288, 292 (2010) (expressly deferring to the fact finder's determination of the credibility of a law enforcement officer).

Applying these principles in *Harris*, the Supreme Court examined whether the evidence provided reasonable suspicion to seize a driver for operating a motor vehicle while under the influence of alcohol. 276 Va. at 693-94. That case involved both an anonymous tip and an officer's description of the defendant's odd-but-innocent driving behavior. *Id.* at 694, 697-98.

- 12 -

In the instant case, like in *Harris*, the circuit court accepted the officer's testimony about what he observed. Here, however, unlike in *Harris*, that testimony directly implicated the appellant in a crime. The officer, who was experienced in looking for weapons in the possession of individuals in an area known for a significant number of weapon-related crimes, saw firsthand the clear outline of the handle and barrel of a firearm in the appellant's pants pocket. The officer described his observations in detail. The court found the officer to be credible. The described observations, coupled with the obvious weight of the object, the officer's experience, and the location of the encounter, justified a seizure of the appellant for a brief investigation to confirm or dispel his concerns. The circuit court therefore did not err by denying the motion to suppress.

CONCLUSION

For the reasons stated, we hold that Officer Labat had reasonable suspicion to seize and then pat down the appellant for concealed weapons. As a result, the circuit court did not err by denying the motion to suppress, and the judgment is affirmed. We remand the case to the circuit court solely for the correction of a clerical error in the sentencing order.[8]

*Affirmed and remanded.*

---

[8] The sentencing order does not reflect that the appellant entered a conditional guilty plea, but the signed plea agreement and transcript of the plea hearing show that the appellant's plea was conditional. Consequently, we remand solely for the circuit court to correct this omission. *See* Code § 8.01-428(B); *Stevens v. Commonwealth*, 72 Va. App. 546, 560 n.5 (2020).