# COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Chaney and Lorish
Argued at Richmond, Virginia


EMER GONZALEZ-ESTRADA, SOMETIMES KNOWN AS
  EMER GONZALEZ ESTRADA

v.     Record No. 0033-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE VERNIDA R. CHANEY
MAY 30, 2023

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Aaron C. Forstie, Senior Assistant Public Defender, for appellant.

Matthew P. Dullaghan, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a jury trial in the Circuit Court of the City of Richmond (circuit court), Emer

Gonzalez Estrada (Estrada) appeals three felony convictions for aggravated sexual battery in

violation of Code § 18.2-67.3 and three felony convictions for taking indecent liberties with a

child in violation of Code § 18.2-370. Estrada contends on appeal that the circuit court erred in

(1) denying his motion to suppress statements obtained in violation of his *Miranda v. Arizona*,

384 U.S. 436 (1996), rights, (2) denying his motion in limine to exclude irrelevant and unduly

prejudicial photographs of the complaining witnesses, and (3) denying his motion to strike based

on the inherent unreliability of the Commonwealth's evidence. Finding no error in the circuit

court's judgment, this Court affirms Estrada's convictions.

---
[*] This opinion is not designated for publication. *See* Code § 17.1-413.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party" in the circuit court. *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). This Court "regard[s] as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.* (citing *Gerald*, 295 Va. at 473).

*A. Estrada's Sexual Abuse of His Children*

For approximately eight years, from around 2007 to 2015, Estrada frequently sexually abused his daughter, L.G. For approximately seven years, from around 2011 to 2018, Estrada frequently sexually abused his son, O.T.[1] O.T. is a year older than L.G., and they were born to two different mothers. O.T. and L.G. resided in separate residences with their mothers and had overnight visits with Estrada on weekends.[2]

Estrada sexually abused L.G. from the time she was 5 or 6 years old until she was around 12, when she refused to visit Estrada's home. The sexual abuse of L.G. included manually touching each other's genitals on multiple occasions.

From the time O.T. was 10 or 11 years old until he was 17, Estrada sexually abused him many times—probably more than a hundred times. The sexual abuse of O.T. included multiple acts of oral and anal sex. At times, Estrada sexually abused O.T. and L.G. when they were all together in the same bed or in the shower.

---

[1] To protect the victims' privacy, they are identified by initials throughout this opinion.

[2] For a brief period when O.T. was a teenager, O.T. and his mother resided in the same home with Estrada.

*B. The Victims' Disclosures of Sexual Abuse*

In January 2019, L.G. disclosed to her mother that Estrada had sexually abused her and O.T. The next day, L.G. called O.T. and told him that she planned to tell his mother about Estrada's sexual abuse because she did not want their younger sister to be sexually abused by Estrada. O.T. asked L.G. not to tell his mother that Estrada had sexually abused him because he feared she would "break down and cry" or be angry with him. When O.T. overheard L.G.'s mother telling his mother about Estrada's sexual abuse of L.G., O.T. cried and told his mother that Estrada had sexually abused him too. Subsequently, O.T. and L.G., accompanied by their mothers, went to the police station and reported Estrada's sexual abuse.

In February 2019, O.T. and L.G. were interviewed at the Henrico Child Advocacy Center (CAC) by Stephanie Davis, an expert in the disclosure of child sexual abuse. The CAC works in conjunction with the Commonwealth's Attorney's Office, law enforcement, child protective services, and others in a multidisciplinary team. After L.G.'s first CAC interview, L.G. told her mother that she did not disclose that Estrada once attempted to touch her vagina with his penis. L.G.'s mother called and informed the prosecutor, and the prosecutor advised that L.G. should return to the CAC for a second interview to inform them about the incident. At her mother's urging, L.G. arranged a second interview at the CAC in July 2019, when she reported the previously undisclosed incident of sexual abuse by Estrada.

Elsa Estrada, Estrada's mother and the grandmother of O.T. and L.G., testified that she had a good relationship with O.T. and L.G. prior to the allegations of sexual abuse, and they never told her about any inappropriate interactions with Estrada. She also testified that she never heard or saw anything inappropriate between Estrada and his children, although her bedroom shared a wall with Estrada's bedroom, and she could hear from her bedroom what was happening

in Estrada's room. She further testified that if she thought Estrada had sexually abused his children, she would have immediately kicked him out of the house and called the police.

When O.T. testified at trial, he made contradictory statements about whether he had ever performed oral sex on Estrada. O.T. acknowledged that some of his testimony was inconsistent with statements he made during his interviews with police, prosecutors, and the CAC. On re-direct examination, O.T. explained that he told a police officer that Estrada did not have oral sex with him because the officer had questioned him in a hallway with no privacy and in the presence of his mother, whom he didn't want to upset with the information. O.T. further testified that he kept Estrada's sexual abuse a secret for years because he was afraid that his mother might get angry at him and kick him out of the house.

Ms. Davis from the CAC, testifying as an expert in the disclosure of child sexual abuse, testified that "[i]t is very common for children to delay disclosure" of sexual abuse. And there is usually a longer delay in disclosures of sexual abuse within a family. Ms. Davis further testified that the majority of the children interviewed at the Henrico CAC and other child advocacy centers around the United States do not promptly disclose sexual abuse. Additionally, Ms. Davis confirmed that an authoritative article on the disclosure of child sexual abuse reported that "there is a consensus in the research literature that most people who experience sexual abuse in childhood do not disclose until adulthood."

### C. Estrada's Statements to Police

After O.T. and L.G. were interviewed at CAC, Estrada was arrested and interrogated by Detective Gerald Brissette at Richmond Police headquarters. Before the interrogation, O.T., L.G., and their mothers told Detective Brissette that Estrada spoke both Spanish and English.

At the beginning of the interrogation, Detective Brissette read Estrada his *Miranda* rights:

> I am Detective Gerald Brissette of the Richmond Police
> Department.

- 4 -

1.  You have an absolute right to remain silent and make no
    statement to me.

2.  Any statement you make can be used as evidence against you.

3.  You have the right to the presence of an attorney at this and
    any future interviews the police might have with you. If you
    are unable to hire an attorney, the court will appoint one for
    you.

I understand that I am being interviewed regarding the commission
of a *felony and or misdemeanor* Crime. I understand these rights,
and I wish to waive them and make a statement.

After the detective read aloud the statement of each *Miranda* right on the waiver form, he asked

Estrada if he understood and Estrada answered, "Yes" or nodded yes. When Detective Brissette

handed Estrada the *Miranda* waiver form, Estrada asked where he should sign the form and then

immediately signed it. Estrada never asked for an attorney.

During the police interrogation, Estrada never requested a Spanish interpreter and never

requested that the interrogation be conducted in Spanish. Detective Brissette testified that he

experienced no problems communicating with Estrada in English.

At the time of the interrogation, Estrada was 42 years old. Estrada told Detective

Brissette that he had lived in the United States since 1994. During the interrogation, Estrada

used English to spell his name, provide his date of birth, state his street address, affirm that he

knew the mothers of O.T. and L.G., and acknowledge that O.T. and L.G. were his children.

During the interrogation, Estrada admitted that sometimes he slept in the same bed with

his children, but he initially denied ever inappropriately touching O.T. and L.G. Subsequently,

he admitted to Detective Brissette that he may have inappropriately touched them when he was

drunk or when they were playing. When Detective Brissette became "concerned things may be

lost in translation," he arranged for Detective Jose Cartagena, who is fluent in Spanish, to join

- 5 -

and participate in the interrogation.  Detective Cartagena did not advise Estrada of his *Miranda* rights in Spanish.

After about an hour of interrogation, Estrada admitted in Spanish that he had touched his children "[w]here [he] shouldn't have touched them."  Immediately thereafter, in response to Detective Brissette's inquiry in English, Estrada admitted touching O.T.'s penis.  When Detective Cartagena asked when this touching occurred, Estrada eventually answered, "I can't give you an exact date.  It was maybe 2014."  After Detective Cartagena asked Estrada to tell him what else happened, Estrada replied, "Just one touch, and that's all, that's all, that's all."

*D.  Motion to Suppress Statements to Detectives*

In July 2020, a hearing was held on Estrada's motion to suppress his statements to Detectives Brissette and Cartagena.  The Commonwealth stipulated that Estrada was in custody during the interrogation.  Estrada argued that the Commonwealth could not prove that Estrada knowingly and voluntarily waived his *Miranda* rights given Estrada's limited English competence and lack of understanding of the American criminal justice system.  The Commonwealth argued that Estrada was sufficiently proficient in English to understand the *Miranda* warnings and that he knowingly and voluntarily waived his *Miranda* rights.  The Commonwealth argued that Estrada demonstrated that he had no trouble understanding English when he answered Detective Brissette's questions during the interrogation.

Estrada testified that he was born in Guatemala and his family spoke Spanish at home. He went to school through the sixth grade, and all his classes were conducted in Spanish.  He never had any formal English instruction.  He can read and write in Spanish, but he can only read English "a little bit," and he is unable to write in English.  He moved to the United States in 1994.  At the time of the suppression hearing, he had lived in the U.S. for 26 years.  He resided in Virginia with his mother and siblings, and they all spoke Spanish at home.  His employers

have been primarily Spanish-speaking, and he usually speaks in Spanish with his co-workers. As a construction worker and HVAC worker, he does not interact with the public at work. When shopping, he speaks in English when necessary. Estrada also testified that O.T. and L.G. spoke to him in "Spanglish . . . like half Spanish and half English."

Estrada further testified that before he was arrested in this case, he had never heard the term "*Miranda* warnings" and never had *Miranda* rights read to him, although he had been arrested twice. Before the February 2019 interrogation, he had never been questioned in a police interrogation room. At the time of the interrogation, he did not know the meaning of the English words "appoint" and "waive." Estrada also testified that he signed the *Miranda* rights waiver form without reading it because he was nervous and he "just wanted to sign the paper and get out of this." On cross-examination, Estrada acknowledged that he had conversed with Detective Brissette in English for almost an hour.

The circuit court found that Estrada acknowledged his understanding of each *Miranda* right that the detective read to him when he "either nodded his head or said, 'Yes'" when asked whether he understood. The circuit court concluded that Estrada's responses indicated that he understood his *Miranda* rights before the detectives questioned him.

After viewing the video of Estrada's conversation with Detective Brissette *in English*, the circuit court made "the factual determination that [Estrada] clearly understood the English language" and "had the requisite level of comprehension to validly waive his *Miranda* rights." The circuit court found that during the interrogation, "Estrada was speaking in sentence form. He was not speaking in broken English, but he was putting his sentence structures together very fluently as if he had no problems at all understanding the English language." Based on the totality of the circumstances, the circuit court found that Estrada knowingly and voluntarily waived his *Miranda* rights "with a full awareness of both the nature of the right being abandoned

and the consequences of the decision to abandon." Accordingly, the circuit court denied Estrada's motion to suppress his statements to the detectives.

*E. Motion to Exclude Photos of the Victims*

Estrada moved in limine to exclude photos depicting O.T. as a teenager and depicting L.G. at ages ranging from 6 to 11. At the time of trial, O.T. was age 20 and L.G. was 19. Estrada objected that the photos had no probative value and were not relevant. Estrada further argued that "balance[ing] under Rule 403 the probative value against any unfair prejudice[,] . . . the photos of — especially [L.G.] as a young girl are inflammatory and don't really add anything to whether or not these offenses occurred."

The Commonwealth argued that it was required to prove, as an element of the charged offenses, the age of each complaining witness at the time of the offense. The Commonwealth proffered that the photos were relevant because the complaining witnesses were younger at the time of the alleged offenses and the photos depicted them at those ages.

The circuit court found that the photos were relevant and denied Estrada's motion. Two photos admitted into evidence depicted O.T. at ages 16 and 15. Four photos admitted into evidence depicted L.G. at approximate ages 6, 7, 10, and 11.

*F. Motions to Strike*

After the Commonwealth rested its case, Estrada moved to strike the evidence and argued that the complaining witnesses' testimony was inherently incredible, impeached, and uncorroborated. The Commonwealth responded that corroboration is not required and that the credibility issue was a question for the jury. The Commonwealth also argued that O.T.'s testimony and L.G.'s testimony were mutually corroborating and described incidents that they both witnessed. The circuit court ruled that the Commonwealth established a prima facie case on

all charges and denied the motion to strike. The court also ruled that the issue of witness credibility was a question for the jury.

After the defense rested, Estrada renewed his motion to strike based on his previous arguments. Additionally, Estrada argued that his motion to strike should be granted based on (i) his testimony denying the accusations and (ii) his mother's testimony that she never saw or heard anything that would lead her to believe the children's allegations of sexual abuse. The circuit court ruled that the issues raised by Estrada were jury issues and denied the renewed motion to strike. This appeal followed.

ANALYSIS

*A. Motion to Suppress Statements to Detectives*

Estrada contends that the circuit court erred in denying his motion to suppress his statements to detectives during custodial interrogation because his statements were elicited in violation of his rights under *Miranda*. As a Spanish-speaking immigrant from Guatemala with a sixth-grade education and no formal instruction in English, Estrada claims that he did not understand the *Miranda* warnings that the detective read to him in English. Estrada argues, therefore, that he did not make a knowing and voluntary waiver of his *Miranda* rights.

The Commonwealth "bears the burden of showing a knowing and intelligent waiver" of *Miranda* rights. *Angel v. Commonwealth*, 281 Va. 248, 257-58 (2011). "The determination of whether the [*Miranda*] waiver was made knowingly and intelligently is a question of fact that will not be set aside on appeal unless plainly wrong." *Id.* at 258 (citing *Jackson v. Commonwealth*, 266 Va. 423, 432 (2003)). "[W]hether a [waiver] was voluntary is a 'legal rather than factual question.'" *Tirado v. Commonwealth*, 296 Va. 15, 28 (2018) (quoting *Gray v. Commonwealth*, 233 Va. 313, 324 (1987)). We review legal issues de novo. *See Calokoh v. Commonwealth*, 76 Va. App. 717, 728 (2023). In reviewing the circuit court's denial of

Estrada's motion to suppress, we consider the evidence admitted at trial in addition to the evidence admitted in the suppression hearing. *See Tirado*, 296 Va. at 24-25. Additionally, we "view the evidence in the light most favorable to the prevailing party, here the Commonwealth, together with all inferences that may reasonably be drawn from it." *Spinner v. Commonwealth*, 297 Va. 384, 392 (2019).

A *Miranda* waiver is a valid waiver only if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Tirado*, 296 Va. at 28 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). "Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* (quoting *Burbine*, 475 U.S. at 421). In determining whether a defendant comprehended the *Miranda* warnings, some of the circumstances we consider are "the defendant's age, education, language, alienage, experience with police, and whether the defendant stated that he understood his rights as read to him." *Id.* at 29.

Estrada's contention that he did not make a valid waiver of his *Miranda* rights hinges on his claim that he did not comprehend the *Miranda* warnings due to his limited understanding of English. This Court finds that the evidence supports the circuit court's factual findings that Estrada "clearly understood the English language" and had the requisite level of comprehension to validly waive his *Miranda* rights. The audio-video recording of the police interrogation supports the circuit court's finding that Estrada "either nodded his head or said, 'Yes'" after Detective Brissette read each *Miranda* warning to him and asked whether he understood. The recording and transcript of the interrogation also support the circuit court's findings that when speaking in English, "Estrada was speaking in sentence form. He was not speaking in broken English, but he was putting his sentence structures together very fluently as if he had no

- 10 -

problems at all understanding the English language." Additionally, O.T., L.G., and their mothers told Detective Brissette that Estrada speaks both English and Spanish, providing more evidentiary support for the circuit court's factual finding that Estrada comprehended and validly waived his *Miranda* rights. Because the circuit court's finding of a knowing and intelligent *Miranda* waiver is not plainly wrong considering the totality of the circumstances, this Court holds that the circuit court did not err in denying Estrada's motion to suppress his statements to the detectives.

### B. Motion to Exclude Photos of the Victims

Estrada contends that the circuit court erred in denying his motion in limine to exclude six photos depicting O.T. and L.G. as children because these photos were irrelevant and unduly prejudicial. Assuming without deciding that the circuit erred in admitting the contested photos into evidence, this Court holds that any such error was harmless. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) (basing decision on harmless error analysis as the best and narrowest ground available, in accord with the doctrine of judicial restraint).

"An appellate court reviews a decision to admit or exclude evidence where no federal constitutional issue was raised under the standard for non-constitutional harmless error provided in Code § 8.01-678." *Haas v. Commonwealth*, 299 Va. 465, 467 (2021). Under this standard, an alleged error is harmless if it did not substantially influence the jury's verdict. *See id.* Accordingly, non-constitutional error is harmless "if other evidence of guilt is so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict . . . ." *Salahuddin v. Commonwealth*, 67 Va. App. 190, 212 (2017) (internal quotation marks omitted) (quoting *McLean v. Commonwealth*, 32 Va. App. 200, 211 (2000)).

The testimony of O.T. and L.G. provided overwhelming evidence that Estrada sexually abused them as charged in the indictments. By comparison, the erroneous admission of the

contested photos is so insignificant that such error could not have affected the verdict. The contested photos of O.T. and L.G. depict them as children in common settings and engaged in "normal child activities." Op. Br. 17. These photos did not inculpate Estrada and were not likely to inflame the jurors' passions and influence them to base their verdicts on considerations beyond the evidence. Thus, the admission of the contested photos could not have substantially influenced the jury's findings of guilt. Therefore, assuming that the contested photos were erroneously admitted into evidence, such error was harmless.

## C. Motion to Strike

Estrada contends that the evidence is insufficient to sustain the convictions because the complaining witnesses' testimony was inherently incredible given the years-long delay in reporting the allegations, the inconsistencies in their testimony, and their prior inconsistent statements. When an appellant challenges the sufficiency of the evidence to support a criminal conviction, this Court "reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party at trial, and considers all inferences fairly deducible from that evidence." *Commonwealth v. Herring*, 288 Va. 59, 66 (2014) (quoting *Allen v. Commonwealth*, 287 Va. 68, 72 (2014)). At issue on appeal is "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). The circuit court's judgment will be affirmed "unless it is plainly wrong or without evidence to support it." *Sarka v. Commonwealth*, 73 Va. App. 56, 62 (2021); *see also* Code § 8.01-680.

On appellate review, this Court defers to the fact-finder's credibility determinations unless the witness's testimony is "inherently incredible, or so contrary to human experience as to render it unworthy of belief." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)). "A legal determination that a witness is inherently

- 12 -

incredible is very different from the mere identification of inconsistencies in a witness'[s] testimony or statements. Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.* (citing *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "Determining the credibility of witnesses who give conflicting accounts is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993).

The testimonial evidence supporting Estrada's convictions was not inherently incredible despite the complaining witnesses' delay in disclosing the sexual abuse. According to the expert testimony, delays in reporting childhood sexual abuse are very common, and there is usually a longer delay in disclosures of sexual abuse within a family. Additionally, the expert in the disclosure of child sexual abuse testified that most people who experience sexual abuse in childhood do not disclose the abuse until adulthood. Therefore, the fact that O.T. and L.G. were in their late teens when they reported their experiences of childhood sexual abuse does not render their testimony inherently incredible. *See Juniper*, 271 Va. at 415 (holding that a witness's delay in reporting knowledge of a case is "appropriately weighed as part of the entire issue of witness credibility, which is left to the jury to determine").

The inconsistencies in the complaining witnesses' testimony and prior statements did not render their testimony inherently incredible. O.T. made some contradictory statements during his trial testimony, and he also acknowledged that some of his testimony was inconsistent with statements he made during his interviews with police, prosecutors, and the CAC. Additionally, there were some inconsistencies between O.T.'s and L.G.'s testimony about their experiences of sexual abuse by Estrada. However, their testimony was not "wholly uncorroborated" and "replete with contradictions and inconsistencies" as in *Willis v. Commonwealth*, 218 Va. 560,

- 13 -

563-64 (1977) (reversing rape conviction where complaining witness's testimony was inherently incredible as a matter of law). In large part, O.T. and L.G. corroborated each other's testimony about Estrada's frequent sexual abuse spanning years of their childhood. And O.T. explained that he omitted details of Estrada's sexual abuse from his original police report because his mother was present, and he did not want to upset her with the information. Here, the inconsistencies in the complaining witnesses' testimony were appropriately weighed and "resolved by the fact finder," as part of the overall credibility determination. *Kelley*, 69 Va. App. at 626 (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)). The jury observed the demeanor of O.T. and L.G. as they testified, and the jury credited their testimony in finding Estrada guilty of sexual abuse as charged. Because this testimony was not inherently incredible, this Court will not disturb the jury's verdict.

## CONCLUSION

The circuit court did not err in denying Estrada's motions to suppress his statements to detectives, to exclude photos depicting the complaining witnesses as children, and to strike the evidence based on legal insufficiency. Therefore, this Court affirms Estrada's convictions.

*Affirmed*.