UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Beales and Athey
Argued at Richmond, Virginia


RAUL CONTRERAS GOMEZ

v.      Record No. 0581-24-2

COMMONWEALTH OF VIRGINIA

RAUL CONTRERAS GOMEZ

v.      Record No. 1225-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
JANUARY 27, 2026


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William E. Glover, Judge

Paul Mickelsen (Reem Rana; Tate Bywater, on briefs), for appellant.

Aaron J. Campbell, Senior Assistant Attorney General (Jason S.
Miyares,[1] Attorney General, on brief), for appellee.


A jury convicted Raul Contreras Gomez of aggravated sexual battery against a child

under 13 years old (two counts), and indecent liberties with a child under 15 years old.  The jury

sentenced him to 14 years of incarceration.  On appeal, Contreras assigns error to the circuit

court's denial of his motion to admit prior sexual conduct under Virginia Rule of Evidence 2:412

and Code § 18.2-67.7.  Contreras also contends that the circuit court erroneously restricted his

ability to cross-examine witnesses at trial.  Finally, Contreras asserts that the circuit court

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

wrongly allowed evidence that he claims impermissibly bolstered the Commonwealth's witnesses.

## I. BACKGROUND[2]

Contreras lived in a townhouse with his partner—Maria Santos—his daughter, and his three sons. In 2019, Contreras invited Diego Angel to live in the townhouse. Contreras knew Diego's mother, and knew that Diego, then 13 years old at the time, needed a place to stay. After Diego moved in, Maria's sister and her sister's daughter, A.S., also came to live with Contreras's family.[3] A.S. was 9 or 10 years old when she moved into the townhouse and lived there until she was 11 years old. Diego slept in the living room, along with two of the other boys that lived in the townhouse. Contreras and Maria slept in a bedroom upstairs, and A.S. slept in another bedroom upstairs with her mother.

Over time, Diego and A.S. developed a relationship. A.S. described Diego as her best friend and said that they would hold hands. Contreras and A.S.'s mother were unhappy with the relationship that had developed between Diego and A.S. In an attempt to demonstrate to A.S.'s mother that he "never intended to have anything" with A.S., Diego recorded videos of A.S. "trying to hug me and stuff like that" without Diego's reciprocation of the hug. In addition, when asked by Contreras's counsel whether he held hands with A.S. "[l]ike boyfriend and girlfriend," Diego testified that he did hold hands with A.S. but not romantically.

---

[2] As we must, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

[3] A.S. had two siblings who also came to live in the townhouse. Though Maria and Contreras were not married, Contreras referred to Maria's sister as his sister-in-law and A.S. referred to Contreras as her uncle.

Diego testified that he saw Contreras inappropriately touching A.S. after he moved into the townhouse. Diego eventually spoke with A.S. about his concerns, and she told him that Contreras had been sexually abusing her.[4] During trial, A.S. testified that Contreras had touched her inappropriately on her chest and vagina. She claimed that, on four occasions, Contreras entered A.S.'s bedroom and inserted his fingers inside her vagina. She further testified that, on one occasion, Contreras entered A.S.'s bedroom and "put his penis on [her]" and then ejaculated "on [her] mom's blanket" and that, on another occasion, Contreras tried to have vaginal intercourse with A.S. but was unsuccessful. She stated that the final incident happened one day as A.S. was coming out of the bathroom. Contreras pushed A.S. back into the bathroom and locked the door. She testified that he tried to force her to perform oral sex and then slapped her when she refused. She claimed that A.S.'s cousins heard her screaming and that they called her mother.

Diego recorded A.S. relaying some of these allegations to him on his phone without her knowledge. Diego made a total of "around five" recordings of A.S. describing instances of abuse. Diego testified that he went to the police and shared the recordings with them "[m]aybe a month" after the last recording. The following day authorities removed all the children from the home and placed them in foster care. Contreras was arrested for aggravated sexual battery.

Before trial, Contreras's counsel filed a motion seeking to introduce evidence of A.S.'s prior sexual conduct, alleging that it was probative of a motive to fabricate the allegations. Contreras's defense strategy involved exploring a romantic relationship between Diego and A.S., which counsel argued revealed a motive to fabricate the allegations against Contreras. Contreras theorized that Diego sought to deflect attention away from his own relationship with A.S. Contreras also intended to demonstrate that A.S. was "obsessed" with Diego and very much wanted Diego's

---

[4] Diego testified that he was the first person to whom A.S. disclosed the abuse.

attention. He further asserted that the "evidence will be that he [Diego] was abusing" A.S.[5] and that the family did not condone the relationship. Contreras argued that evidence of their relationship would support his theory that Diego and A.S. fabricated the allegations against Contreras.

At the hearing on Contreras's motion to admit evidence of prior sexual conduct, Byron (who is Contreras's child) testified that Diego and A.S. had a sexual relationship. Byron said he witnessed Diego and A.S. engaging in sexual activity in the living room "[a]pproximately 10 times." Byron also stated that Diego had shown him a video depicting sexual conduct between A.S. and Diego. The circuit court found that "the evidence that's presented viewed in the light most favorable to your client [Contreras] is that these two young people were having sex with each other. That's it." The circuit court denied Contreras's motion to admit evidence of prior sexual conduct, finding that the evidence failed to establish a possible motive for A.S. to fabricate the allegations against Contreras.

Contreras also informed the circuit court that he intended to introduce evidence that A.S. had threatened to accuse Diego of rape "if they couldn't be together." Contreras proffered that he would introduce text messages that Diego had sent to two people corroborating that contention. The circuit court stated that Contreras's counsel is "absolutely forbidden from mentioning that from your opening" and reserved further judgment on its admissibility until later at trial.

At trial, Diego testified that Contreras openly touched A.S. inappropriately in front of everyone in the house. Diego said he heard Contreras "going back and forth" to and from A.S.'s bedroom and that he also heard noises, and sometimes "scared screams," coming from upstairs. Diego also testified that Contreras had confronted him about the relationship Diego had with

---

[5] Diego was 15 years old and A.S. was 11 years old at the time.

A.S. and that Contreras had threatened to kick him out of the house. However, Diego denied that Contreras had threatened to kick him out actually because of the relationship.

Contreras's counsel questioned Diego about incidents in which A.S. had threatened Diego with an "iron bar" and threw "knives" at him because he would not "be with her."[6] As Contreras's counsel cross-examined Diego about this aspect of his relationship with A.S., the Commonwealth objected based on the trial court's ruling excluding evidence of prior sexual conduct. Outside the presence of the jury, Contreras's counsel argued that there had been no reference to any sexual conduct and that he intended to reveal motives to fabricate and biases of the witness. The circuit court, citing the use of the phrase "be with her," stated that Contreras was attempting to "inferentially" sidestep the pre-trial ruling on prior sexual conduct. The circuit court told Contreras's counsel that he "may not suggest by your questions to this witness that the victim desired a sexual relationship with" Diego. The circuit court also found the line of questioning to be outside the scope of direct examination.

Contreras's counsel then informed the circuit court that he intended to ask Diego whether A.S. had threatened to accuse Diego of rape. The circuit court barred that line of questioning as well. After Contreras's counsel asked the circuit court for the basis of the court's ruling, the circuit court judge stated, "I have articulated my thought process on this entire proceeding adequately for the record for the Court of Appeals or the Supreme Court. I'm not going to say anything else at this point."

After the jury returned to the courtroom, Contreras's counsel began asking Diego about his relationship with A.S. He asked Diego whether he "would hold hands with" A.S. as well as where the two would hold hands with one another. The Commonwealth then objected to the

---

[6] The record indicates there was a "video of her [A.S.] coming out of the kitchen with an iron bar" that the circuit court did not receive into evidence.

question about where A.S. and Diego would hold hands as being outside the scope of direct examination. Contreras's counsel responded that "it goes to the nature of the relationship with the person that made the accusation to him [Diego], and it goes to bias and motive." The circuit court sustained the objection because the question was "outside of the scope of direct." Responding to the Commonwealth's objection to his inquiry of whether A.S. "showed an interest in having a romantic relationship" with Diego, Contreras's counsel argued that "it goes to bias and motive." The circuit court sustained the Commonwealth's objection.[7]

After the Commonwealth finished direct examination of A.S., Contreras's counsel then cross-examined A.S. During cross-examination, Contreras's counsel asked the circuit court to reconsider its pre-trial ruling "and allow counsel to explore the [A.S.'s] relationship with Diego." After considering arguments presented by both parties, the circuit court ruled that Contreras's counsel could ask A.S. "if she was fond of" Diego and whether "she was afraid that he would be made to leave the residence." However, the circuit court also ruled that he could not "ask her if they were having sex and can't imply it." When Contreras's counsel contested that decision, the circuit court removed the jury from the courtroom and asked Contreras's counsel "to proffer for the Court what it is that you intend to elicit from the witness -- from this witness by way of questions with regard to her relationship with Diego." Contreras's counsel then stated:

> I intend to ask him -- ask her whether she threatened Diego with knives if he would not be with her. I would ask her if she threw a knife at him because he said he would not be with her. I would ask her if she'd hit Diego with an iron bar because he would not be with him (sic). I would ask her to recognize herself in the video that Diego took with an iron bar in her hand. I would ask her whether she hit him because he wouldn't give her a hug. And I

---

[7] Contreras's counsel also asked the circuit court if he could ask Diego whether he had awakened to find A.S. "many times on top of him when he was asleep." The circuit court replied, "We may get there, but you're not going to get there on Cross of this witness. The answer is no at this point."

would ask her if she threatened to accuse him of rape if he wouldn't be with her.

The circuit court then asked to hear from the Commonwealth. The Commonwealth objected to the admission of the proffered evidence because "the first five things that were proffered, threaten Diego with knives, throw knives, iron bar at him if you're not going to be with me, a video of that, and hitting him for not hugging her, I'm going to go on relevance of all of those." He then stated that he was unsure what the basis was of the threat "to accuse Diego of rape." In addition, he agreed that the defense could ask A.S. whether she made up all of the accusations against Contreras because she "wanted Diego to stay in the house." However, the Commonwealth's counsel said that counsel for Contreras was "attempting to seek" and make the case about Diego even though "Diego is not the complaining witness."

After hearing these arguments from the Commonwealth and Contreras's counsel, the circuit court ruled "that the relationship between Diego and the victim is material and relevant to the extent that the victim may have wanted to prevent Diego from being removed from the house." The circuit court also told Contreras's counsel that he was "permitted to ask her if she was--if she was aware that the Defendant was threatening to kick Diego out." However, the circuit court judge also stated, "I do not believe that the suggestion that they were having sex is--I continue to believe that that is prohibited by the language of the statute. That's my ruling."[8]

Contreras's counsel then asked the circuit court to clarify its ruling. He asked, "is the Court making a ruling on all of the questions I intended to" ask? The circuit court judge responded, "Yes, because all of them are oriented towards establishing that they were having a sexual relationship."

---

[8] The statute referenced by the circuit court judge is Code § 18.2-67.7.

Contreras's counsel then returned to cross-examining A.S. A.S. testified that she was aware that Contreras and her mother were upset about her relationship with Diego. However, she claimed that she did not know that Contreras wanted Diego out of the house. Contreras's counsel also asked A.S. if she was upset that Diego did not like her. The Commonwealth objected to relevance and scope, and the circuit court sustained the objection.

The Commonwealth then called its final witness, Detective Pattye Harper, who testified to the investigative process of the Child Victims Unit (CVU). Detective Harper testified that the initial warrant against Contreras was issued in October 2021. During direct examination, counsel for the Commonwealth asked Detective Harper, "Now, initially you only had a certain set of charges; is that correct? Were there additional -- an additional charge developed later on based upon subsequent investigation?" When Detective Harper tried to respond, Contreras's counsel objected to the question because "the indictment is not evidence" and because "bringing up warrants, I submit, is not relevant." He also argued that "to have an officer come in here and say we secured these warrants -- we secured them is not relevant." The circuit court overruled the objection. Detective Harper then confirmed that the police brought an additional charge against Contreras after they accumulated additional evidence.

Contreras testified and denied all the allegations. Maria, Contreras's partner, testified that she never saw him touch A.S. inappropriately. The jury convicted Contreras of two counts of aggravated sexual battery and one count of indecent liberties with a minor. The jury also acquitted Contreras of rape. Contreras's counsel then filed a motion to set aside the verdict, for a new trial, and for the reinstatement of bond. In support of his motion, Contreras's counsel reiterated that the circuit court should have allowed him to ask about Diego's and A.S.'s relationship. He argued that the circuit court had limited his right to cross-examine witnesses about what he claimed was non-sexual conduct related to bias and motive. The circuit court

denied the motion to set aside the verdict, for a new trial, and for the reinstatement of bond. Contreras now appeals to this Court.

## II.  ANALYSIS

### A.  Exclusion of Questions and Evidence about Prior Sexual Conduct

On appeal to this Court, Contreras argues, "The trial court erred in denying Defendant's Motion to Admit Prior Sexual Conduct of the complaining witness and Diego Cruz Angel and in prohibiting relevant admissible evidence of the witnesses' prior conduct."

We review a circuit court's decision to admit or exclude evidence for an abuse of discretion. *Lambert v. Commonwealth*, 70 Va. App. 740, 749 (2019).  "In evaluating whether a trial court abused its discretion, we do not substitute our judgment for that of the trial court.  Rather, we consider only whether the record fairly supports the trial court's action."  *Welsh v. Commonwealth*, 304 Va. 118, 136 (2025) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)).  "[A] trial court 'by definition abuses its discretion when it makes an error of law.'"  *Lambert* 70 Va. App. at 750 (quoting *Auer v. Commonwealth*, 46 Va. App. 637, 643 (2005)).

In prosecutions for sexual assault, "general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted."  Code § 18.2-67.7.  "Specific instances" of a complaining witness's "prior sexual conduct shall be admitted" for limited purposes.  Code § 18.2-67.7.  *See Ortiz v. Commonwealth*, 276 Va. 705, 718 (2008) (citing *Winfield v. Commonwealth*, 225 Va. 211, 219 (1983)).  "One such purpose is to show a victim's motive to fabricate."  *Id.*  However, "[t]o be admissible under the 'motive to fabricate' exception, the proffered evidence of sexual conduct must show a pattern of behavior by the victim that directly relates to the conduct charged in the case on trial."  *Id.* (quoting *Winfield*, 225 Va. at 220).  According to the Supreme Court, "There must be a 'sufficient nexus' to render such evidence relevant and probative of a motive to fabricate."  *Id.* (quoting *Winfield*, 225 Va. at 220).  *See also*

*Winfield*, 225 Va. at 220 (holding that a sufficient nexus existed between the complaining witness's pattern of extorting money by threats following acts of prostitution and the defendant's asserted theory that the complaining witness fabricated the allegations to extort money).

In *Ortiz*, the minor victim alleged that her mother's boyfriend had touched her vaginal area. *Id.* at 717. However, she later alleged that Ortiz had raped her and then said the boyfriend had not touched her "in a bad way." *Id.* The defense theorized that the child accused Ortiz, instead of the mother's boyfriend, in order to placate her mother. *Id.* Ortiz contended that the evidence of the alleged prior sexual conduct with the boyfriend was admissible to show a motive to fabricate. *Id.* The Court held that the evidence was properly excluded because there was no nexus between the charge against Ortiz and the incident with the boyfriend. *Id.* at 718-20.

However, in *Winfield v. Commonwealth*, 225 Va. 211, the Court determined that there was a sufficient nexus between the complainant's prior sexual conduct and the case at hand, rendering the evidence "relevant and probative of a motive to fabricate." *Id.* at 220. The complainant accused Winfield of raping her after he refused to pay her for a sexual encounter. *Id.* at 216-17. Winfield proffered evidence showing "a distinctive pattern" of the complainant using threats to extort money after acts of prostitution. *Id.* at 220. Accordingly, the Supreme Court ruled that "[i]f, upon an evidentiary hearing," Winfield could "show such a pattern," then that evidence should be admitted and "[i]ts exclusion as a matter of law, based only upon the description contained in the notice, is error requiring reversal." *Id.*

In the case now before this Court on appeal, Contreras has not shown that the circuit court abused its discretion when it held that Contreras could not admit the prior sexual conduct of A.S. Before trial, Contreras's counsel tried to introduce evidence of A.S.'s prior sexual conduct. In particular, Contreras's counsel tried to introduce testimony from Byron—Contreras's son—in which Byron claims that he saw A.S. and Diego "ha[ve] sex multiple times," including under a

- 10 -

blanket while Byron was in the room with them. Contreras's counsel also tried to introduce testimony from Byron in which Byron stated that Diego had shown him a video depicting sexual conduct between A.S. and Diego. In addition, he asked the circuit court throughout trial whether he could ask Diego if A.S. had threatened to accuse him of rape if he would not be A.S.'s boyfriend. Furthermore, he asked whether he could ask witnesses about A.S. "having been abused by Diego causing her to obsess about him." Contreras's counsel theorized that A.S. and Diego conspired to accuse Contreras of sexually abusing A.S. to draw attention away from A.S. and Diego's own sexual relationship.

While the circuit court did find during the pre-trial rape shield hearing that "the evidence that's presented viewed in the light most favorable to" Contreras showed that A.S. and Diego "were having sex with each other," the circuit court nonetheless concluded that the evidence provided by Contreras "does not establish or even suggest a motive to lie in her [A.S.'s] accusations against" Contreras. Unlike the accusing party in *Winfield*, there is not "a distinctive pattern" of A.S. threatening to accuse Contreras or anyone else of sexual misconduct. Moreover, unlike the accusing party in *Ortiz*, A.S. did not have a history of accusing people of committing sexual acts against her. Thus, Contreras simply has not shown how the mere existence of a sexual relationship between A.S. and Diego, without any additional information, supports his claim that A.S. and Diego conspired against him. Rather—as stated by the circuit court—the evidence presented by Contreras's counsel during the rape shield hearing only established (at best) "that someone saw the two of them -- the two children having sex, but it doesn't tend to establish a motive to accuse" Contreras.

Simply put, while the circuit court recognized that Contreras sought to establish "as part of the theory of the case" that A.S. and Diego's alleged sexual relationship gave them a motive to fabricate evidence against Contreras, that theory was "not established at all in the evidence."

Therefore, the circuit court could reasonably conclude that Contreras had not shown a sufficient nexus between the proffered evidence of A.S.'s sexual conduct and Contreras's theorized motive to fabricate. "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Bista v. Commonwealth*, 303 Va. 354, 370 (2024) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)). Thus, the circuit court did not err in excluding evidence of the alleged sexual conduct between A.S. and Diego that Contreras sought to admit.

### B. Limitation on Cross-examination of A.S. and Diego

Contreras also argues, "The trial court erred in restricting Appellant's cross examination of the complaining witness and Diego Cruz Angel."[9]

"Cross-examination is an absolute right guaranteed to a defendant by the confrontation clause of the Sixth Amendment and is fundamental to the truth-finding process." *Cairns v. Commonwealth*, 40 Va. App. 271, 285 (2003) (citing *Clinebell v. Commonwealth*, 235 Va. 319, 325 (1988)). "Although a trial court may exercise discretion to see that the right of cross-examination is not abused, the discretion may be employed only after the right to cross-examine has been fairly and substantially exercised." *Barrett v. Commonwealth*, 231 Va. 102, 108 (1986).

However, "[w]hen testimony is excluded before it is presented, the record must reflect a proper proffer showing what the testimony would have been." *Holles v. Sunrise Terrace*, 257 Va. 131, 135 (1999) (quoting *Chappell v. Va. Elec. Power Co.*, 250 Va. 169, 173 (1995)). "It is well established that a party who wishes to challenge the trial court's exclusion of evidence on appeal must provide a proffer of that evidence that is adequate to permit this Court to determine whether the lower court erred." *Smith v. Commonwealth*, 72 Va. App. 523, 541 (2020). Without a proffer, this Court "cannot determine the admissibility of the proposed testimony and, if admissible, whether

---

[9] As noted *supra*, we review a circuit court's decision to admit or exclude evidence for an abuse of discretion. *Lambert*, 70 Va. App. at 750.

- 12 -

the court's exclusion of that evidence prejudiced" Contreras. *Holles*, 257 Va. at 135. Indeed, when "testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer." *Whittaker v. Commonwealth*, 217 Va. 966, 968 (1977) (citing *Jackson's Case*, 98 Va. 845, 846-47 (1900)).

In *Whittaker*, the Supreme Court considered a challenge to a proffer made by Whittaker's counsel at trial. *Id.* at 967. During cross-examination of a witness, Whittaker's counsel asked the witness about how much time the witness was serving on some preexisting burglary convictions. *Id.* In response, Whittaker's counsel stated:

> I would like to show a motivation for this man testifying against Whittaker in that on all his other convictions he has been required to serve one year in the penitentiary or one year incarceration, and that upon that the Commonwealth attorney has extended leniency in cases for agreeing to testify.

*Id.* at 967. The trial court ruled that the testimony sought by Whittaker's counsel was immaterial, and Whittaker appealed. *Id.* On appeal, the Commonwealth argued that any error by the trial court in excluding the testimony was harmless because Whittaker's counsel "failed to make a proper proffer of the testimony excluded." *Id.* at 968. Because the parties did "not agree what constitutes a proper proffer," the Supreme Court explained that, when a "'court sustained the objection to the question it was incumbent upon the defendant to make the record show the expected answer.'" *Id.* at 968-69 (quoting *Owens v. Commonwealth*, 147 Va. 624, 630-31 (1927)).[10] The Supreme Court then found that the proffer at issue in that case was proper. *Id.* at 969.

---

[10] The Supreme Court then held

> that a unilateral avowal of counsel, if unchallenged, or a mutual stipulation of the testimony expected constitutes a proper proffer, and that absent such acquiescence or stipulation, this Court will not consider an error assigned to the rejection of testimony unless such

In *Tynes v. Commonwealth*, 49 Va. App. 17 (2006), this Court considered whether a defendant could challenge the exclusion of two questions on cross-examination when the defendant's counsel failed to properly proffer what the defendant's answers to the excluded questions would have been. *Id.* at 21-25. There, Tynes was accused of robbing two people at gunpoint. *Id.* at 20. During cross-examination of one of the alleged victims by Tynes's counsel, he asked whether the victim was "talking back and forth" with the other victim before the attack. *Id.* The Commonwealth objected "on relevance and hearsay ground." *Id.* Tynes's counsel then made a proffer for the record:

> Tynes's counsel stated that he wanted "to explore this line of questioning" and intended "to show through other evidence that [the victim] had gone down there, he had made statements to others that he was going to hang for awhile, that he was going to get a cab home later and that he had a little bit on him."

*Id.* Tynes's counsel then sought to ask the victim whether he "found 'drug paraphernalia' when he went 'back to the scene' after the alleged robbery." *Id.* The circuit court rejected this question on relevance grounds. *Id.* Tynes's counsel then "proffered that 'contraband was found among the personal effects and also found at the scene of the incident.'" *Id.* at 21. The circuit court rejected this question as well. *Id.*

This Court stated that it could not "competently determine error—much less reversible error—without 'a proper showing of what that testimony would have been.'" *Id.* (quoting *Holles*, 257 Va. at 135). Addressing the first proffer, this Court explained that Tynes's counsel did not "explain how a statement made in a conversation between" the two victims "would have survived the prosecutor's relevance and hearsay objections." *Id.* at 22-23. There was thus no way for this

---

testimony has been given in the absence of the jury and made a part of the record in the manner prescribed by the Rules of Court.

*Whittaker*, 217 Va. at 969.

- 14 -

Court to determine whether the victim's answer "would have been admissible" or even whether any error by the circuit court "would be considered prejudicial under harmless error principles." *Id.* at 23. Addressing the second proffer, this Court explained that Tynes's counsel did not proffer that the victim would have testified that he had drugs with him at the time that he was assaulted. *Id.* at 23-24. In sum, this Court concluded, "The failure to proffer the *expected testimony* is fatal to his claim on appeal." *Id.* at 21-22 (emphasis in original) (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 367-68 (2006)).

In this case now before us on appeal, Contreras's counsel sought to admit multiple pieces of evidence without providing a sufficient proffer. On brief, Contreras's counsel lists seven separate instances where the circuit court denied his request to elicit testimony that he claims did not involve sexual conduct. First, he tried to elicit evidence of A.S. "crying in a recording where [she] was expressing, she wanted to be with Diego." Second, he tried to elicit evidence that A.S. "routinely showed an interest in having a romantic relationship with Diego." Third, he attempted to include evidence of A.S. and Diego holding hands. Fourth, he wanted to include evidence that A.S. "was upset that Diego did not like her." Fifth, he wanted the jury to consider evidence that A.S. "threatened Diego with an iron bar." Sixth, he tried to elicit "[e]vidence that Diego had woken up many times with [A.S.] on top of him." Finally, he wanted to include evidence that A.S. "threatened Diego with knives if he would not be with her." In his reply brief, Contreras's counsel lists the places in the record where he allegedly proffered these points to the circuit court.

A review of the timely filed transcripts[11] and other places in the record where Contreras claims to have proffered these evidentiary points to the circuit court reveals that Contreras never

---

[11] Contreras's counsel also states that he proffered the evidence at issue during the hearing on his motion to set aside the verdict. However, that transcript was not timely filed and is therefore not part of the record on appeal. Rule 5A:8(a) ("The transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court no later than 60 days after entry of the final judgment."). Therefore, this Court cannot consider that transcript

properly proffered these evidentiary points that he sought to include in the evidence—with the answers he anticipated. Instead, Contreras's counsel failed to proffer the expected answers to the questions that he wanted to ask A.S. and Diego. In another instance, Contreras's counsel proffered the exact questions that he planned to ask A.S. and Diego. He explained that he planned to ask A.S. "whether she threatened Diego with knives if he would not be with her" and whether "she threatened to accuse him [Diego] of rape if he wouldn't be with her." However, he also never proffered to the circuit court judge what he expected the answers to those questions would be.

Contreras's counsel explained why he wanted to ask A.S. about her alleged relationship with Diego. In particular, he stated, "the Defendant's entire theory as to her [A.S.'s] reasons to be fabricating this" claim against Contreras "is that she wanted to be with Diego." The Supreme Court has repeatedly stated that when a defendant seeks to proffer evidence to which the opposing party has objected, it is "incumbent upon the defendant to make the record show the expected answer." *Whittaker*, 217 Va. at 969 (quoting *Owens*, 147 Va. at 630-31). Indeed, this Court has also explained that a party's "failure to proffer the *expected testimony* is fatal to his claim on appeal." *Tynes*, 49 Va. App. at 21-22 (emphasis in original) (quoting *Molina*, 47 Va. App. at 367-68). In addition, a defendant's decision simply to state how the evidence at issue relates to their theory of the case is also not enough to be an adequate proffer. *See id.* at 23 (explaining that "rather than disclosing what [the victim's] 'testimony would have been' on this subject," the defendant's "counsel merely repeated his theory of the case" (quoting *Lockhart v. Commonwealth*, 34 Va. App. 329, 340 (2001))). Here, by failing to state what the responses of A.S. and Diego would have been to his questions, counsel for Contreras failed to proffer the required expected answers to the evidentiary points or matters at issue in this assignment of error.

---

now on appeal. *See Shiembob v. Shiembob*, 55 Va. App. 234, 246 (2009) (stating that "[t]his Court has no authority to make exceptions to the filing requirements set out in the Rules" (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986))).

This longstanding and binding requirement (that a party must state what the expected answer to a question will be to conduct a proper proffer) is based on the deference owed to trial courts. "In order to show that the trial court erred in rejecting an offer of evidence, or in excluding evidence" when "a question is asked, and the witness is not permitted to answer, the bill of exceptions must show what the party offering the witness expected or proposed to prove by him." *Owens*, 147 Va. at 630 (quoting *Union Cent. Life Ins. Co. v. Pollard*, 94 Va. 146, 157 (1896)). Thus, this Court cannot simply rule that a circuit court committed error, "much less reversible error—without 'a proper showing of what that testimony would have been.'" *Tynes*, 49 Va. App. at 21 (quoting *Holles*, 257 Va. at 135). To do otherwise would undermine the clear duty of an appealing litigant to give this Court the information it needs to overrule a circuit court's evidentiary decision. *See Eckard v. Commonwealth*, 303 Va. 290, 302 (2024) (affirming this Court's decision finding that the defendant's written proffers were not included in the record before this Court and stating, "We have many times pointed out that on appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of" (quoting *Justis v. Young*, 202 Va. 631, 632 (1961))).

Furthermore, the Supreme Court—and this Court—have ruled that the Commonwealth need not contest the adequacy of a litigant's proffer during trial in order to then challenge the adequacy of that litigant's proffer on appeal. In *Whittaker*, the Supreme Court still considered the Commonwealth's challenge on appeal to the adequacy of the defendant's proffers even though the Commonwealth did not challenge those proffers during the trial. 217 Va. at 968-69. Similarly, this Court in *Tynes* likewise still considered on appeal the Commonwealth's challenge to the adequacy of the defendant's proffers at issue in that case, even though the Commonwealth there only objected on materiality and relevance grounds during the trial. 49 Va. App. at 20-21. Moreover, this Court

in *Tynes* then went on to reject the defendant's arguments on appeal because the defendant's proffers were inadequate. *Id.* at 21-23. Thus, it is well-established that the Commonwealth did not have to claim during trial in this case that Contreras's proffers were flawed in order to then later make that argument in front of this Court on appeal.

Therefore, because Contreras did not proffer what the answers would have been expected to be to the questions that he sought to ask A.S. and Diego during trial, we simply cannot say that the circuit court erred when it denied those requests for further cross-examination of A.S. and Diego at trial.

### C. Testimony of Detective Harper

Finally, Contreras asserts, "The trial court erred in allowing Detective Pattye Harper to testify about how her investigation led her to bring additional charges against Appellant."

As we noted *supra*, the Supreme Court has stated, "In a non-constitutional context, we review a trial court's rulings on whether to admit or exclude evidence under an abuse of discretion standard." *Swann*, 290 Va. at 197 (citing *Lawlor v. Commonwealth*, 285 Va. 187, 229 (2013)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "On appellate review of issues involving the admissibility of evidence, the Court views the evidence in the light most favorable to the Commonwealth as the party who prevailed below." *Bazemore v. Commonwealth*, 82 Va. App. 478, 495 (quoting *Haas v. Commonwealth*, 71 Va. App. 1, 5 n.1 (2019)).

The circuit court did not abuse its discretion when it allowed the Commonwealth to ask Detective Harper whether there was "an additional charge developed later on based upon subsequent investigation" and when it allowed Detective Harper to confirm the existence of the additional charge. Contreras simply has not established how Detective Harper's testimony improperly bolstered the Commonwealth's case. The jury was aware that Contreras was on trial

for four offenses and was instructed that it "should not assume the defendant is guilty because he has been indicted and is on trial."

In addition, even assuming without deciding that the circuit court's decision allowing Detective Harper's testimony was error, that error was harmless because it did not affect the outcome of the case. *See* Code § 8.01-678. Evidentiary errors regarding the pure question of admissibility of evidence are examined "under the standard for non-constitutional harmless error." *Salahuddin v. Commonwealth*, 67 Va. App. 190, 211-12 (2017). "Non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Id.* at 212 (alteration in original) (quoting Code § 8.01-678). The circuit court's admission of Detective Harper's testimony confirming that her investigation led to an additional charge, even if admission of that testimony were error, was not a significant error that could have affected the jury's verdict. *Smith*, 72 Va. App. at 542.

### III.  CONCLUSION

For all of the foregoing reasons, we do not disturb the judgment of the circuit court.

*Affirmed.*